James P. Benassi, Public Advocate, Frankfort, for respondent.

**COMMONWEALTH of Kentucky, Movant,**

v.

**Jeffrey Lisle VANOVER, Respondent.**

Supreme Court of Kentucky.

March 21, 1985.

As Corrected March 22, 1985.

Rehearing Denied May 23, 1985.

David L. Armstrong, Atty. Gen., David A. Smith, Asst. Atty. Gen., Frankfort, for movant.

WINTERSHEIMER, Justice.

This appeal by the Commonwealth is from a decision of the Court of Appeals that statements given at the police post and jail by Vanover were the result of inculpatory statements made in a police cruiser and should not have been admitted into evidence.

The sole issue is whether the trial court committed reversible error in admitting the evidence of Vanover's initial confession.

A Perry Circuit Court jury found Vanover guilty of second-degree burglary and theft by unlawful taking over $100, and sentenced him to a total of 6 years. On appeal, Vanover's conviction was reversed, the Court of Appeals concluding that his constitutional rights were violated by the admission into evidence of an inculpatory statement made by him to a deputy sheriff.

On Sunday afternoon, July 11, 1982, a home was burglarized and Vanover was a suspect. Before being arrested later that afternoon, Vanover declined to make a statement to a sheriff's deputy. At about 4:10 p.m. on the same day, a state police detective arrested Vanover and read him his *Miranda* rights. Vanover did not request counsel but he again declined to make any statement. There was no further questioning of Vanover at that time. In advising the accused of his rights, a written waiver form was read to him and signed by the defendant.

Thereafter, the detective again advised Vanover of a witness who said she had seen the accused with the gun near his home at about the time the police estimated he would have been there. Shortly thereafter, Deputy Sheriff Johnny Couch, who was a neighbor of the accused, joined Vanover in the police cruiser. The deputy again advised Vanover of his *Miranda* rights and told him, "If you did this it would be better if you just went ahead and told us because people have seen you." Vanover then told the deputy where to find

the stolen items. Later he gave two additional statements at the police post and at the jail, but those statements are directly connected with the first admission.

Vanover was convicted but the conviction was overturned by the Court of Appeals pursuant to its application of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

■ We reverse the decision of the Court of Appeals because the right to silence does not create an automatic indefinite prohibition on any further questioning.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court ruled that if an individual in custody indicates in any manner at any time prior to or during questioning that he wishes to remain silent, interrogation must stop because he has shown that he intends to exercise his Fifth Amendment privilege and any statement taken after that time is the product of compulsion.

In *Michigan v. Mosley, supra,* the U.S. Supreme Court held that once the right to silence was invoked, *Miranda* did not create a *per se* prohibition of indefinite duration on any further questioning.

*Mosley, supra,* states:

We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* whether his "right to cut-off questioning was scrupulously honored. A review of the circumstances leading to the Mosley confession reveals that his right to cut-off questioning was fully respected.

The *Mosley* case involved several factors leading to its result: 1) He was advised of his rights before the first interrogation. 2) The initial interrogation promptly ceased when he invoked his right to silence. 3) The arresting officer did not resume the questioning or attempt to persuade Mosley to reconsider. 4) After an interval of over two hours a different police officer resumed interrogation about the unrelated crime after advising Mosley of his rights

again, and, 5) Mosley responded not to the questioning but instead to information about the case against him.

A comparison of the *Mosley* standards to this case indicates that: 1) Vanover was advised of his rights before the arresting officer asked if he had anything to say. 2) The arresting officer promptly stopped any questioning when Vanover declined to give a statement. 3) The arresting officer did not resume the questioning or attempt to persuade Vanover to reconsider his position. 4) After the interval of an undetermined period of time, a different policeman "questioned" Vanover after advising him of his rights again, and, 5) Vanover responded not to a question, but to a statement apprising him of the evidence in the case the police had just gathered against him.

■ Here, as in *Mosley,* the confession was more a product of the accused's being confronted with the totality of available evidence rather than his will being undermined by repeated and continuous questioning. There is a strong argument that Deputy Couch's inquiry would not amount to questioning under these circumstances. *See Shadoan v. Commonwealth,* Ky., 484 S.W.2d 842 (1972); *Douglas v. Commonwealth,* Ky., 586 S.W.2d 16 (1979). Vanover's attempt to distinguish these cases is not convincing.

*Creech v. Commonwealth,* Ky., 412 S.W.2d 245 (1967), is not applicable because the circumstances here are not similar. Vanover was not immediately confronted in such a manner as to persistently wear down his resistance and make him change his mind.

The decision of the Court of Appeals is reversed and this case is remanded to them to consider the other alleged errors raised in the initial appeal.

GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion.

STEPHENS, C.J., and AKER, J., join in this dissent.

LEIBSON, Justice, dissenting.

The Court of Appeals reversed the judgment and remanded for a new trial because the trial court erroneously admitted as evidence the inculpatory statement made to the deputy sheriff in the police cruiser shortly after the respondent's arrest, and two later statements which were conceded to be the fruit of the first statement. These statements should have been suppressed because the first statement was obtained by means constitutionally impermissible.

Commencing with a time shortly before arrest and continuing after arrest when he was put into a police car for transportation to jail, the respondent was questioned repeatedly. Altogether he was questioned four times, on each occasion by a different police officer, and with each new interrogation occurring almost immediately after cessation of the preceding one. He declined to make a statement on the first three occasions, and only confessed on the fourth occasion after a deputy sheriff whom he knew got into the police cruiser where he was being held and told him, "if [you] did this it would be better if you just went ahead and told us, because people have seen you." Respondent then confessed and told the deputy where to find the stolen items.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that if an individual in custody indicates in any manner at any time before or during questioning that he wishes to remain silent, interrogation must stop because he has shown that he intends to exercise his Fifth Amendment privilege and any statement taken after that time is a product of compulsion.

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the United States Supreme Court refined the view expressed in *Miranda*. It held that the *Miranda* requirement that police interrogation must cease when the person in custody indicated that he wished to remain silent did not create a per se proscription of indefinite duration against further questioning by any police officer at any time or place on any subject. But the admissibility of incriminating statements obtained after a person in custody has initially decided to remain silent depends on "whether his 'right to cut off questioning' was 'scrupulously honored.'" 423 U.S. at 104, 96 S.Ct. at 326.

The circumstances distinguishing *Mosley* from *Miranda* do not exist here. In *Mosley* the defendant was arrested in connection with certain robberies. When he declined to discuss these robberies the police officer immediately ceased the interrogation and the defendant was then taken to a cell. More than two hours later, another police officer took the defendant to another place in the building, again advised him of his *Miranda* rights, and then questioned him concerning a murder unrelated to the prior interrogation. The court held the second interrogation was admissible because it had occurred after a significant time lapse, was directed solely to a different crime than those about which he had been previously questioned, and was conducted at another location in the building by another officer.

*Michigan v. Mosley*, as did *Miranda*, forbids continued questioning, or renewed questioning after a cessation of short duration, whether by the same or different police officers, regarding the same offense. It rules out "repeated rounds of questioning to undermine the will of the person being questioned." 423 U.S. at 102, 96 S.Ct. at 325.

Here the respondent was a person of limited mentality, functioning in an intellectual range termed "borderline." He was induced to incriminate himself shortly after he had invoked his right to remain silent and before any change in circumstances by pressure similar in kind to that deemed constitutionally impermissible in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). We are told in *Miranda v. Arizona, supra*, that such a statement must be considered "the product

**14**

of compulsion, subtle or otherwise." 384 U.S. at 474, 86 S.Ct. at 1627.

Further, this case falls squarely under our decision in *Creech v. Commonwealth*, Ky., 412 S.W.2d 245 (1967). There, as here, a mentally deficient defendant declined to testify, was immediately confronted with other testimony already acquired against him, and made an incriminating statement. We reversed, holding that the trial court should not admit such a statement.

The most recent United States Supreme Court case in point, *Smith v. Illinois*, 469 U.S. ——, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) restates and reenforces by analogy the rule that once the right to remain silent has been invoked it is *not* waived by the accused's willingness to incriminate himself at subsequent interrogation. When first questioned, Smith invoked his right to counsel during questioning, and then changed his mind. In holding the confession subsequently obtained should have been suppressed the United States Supreme Court stated:

> " 'No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all.' " 105 S.Ct. at 495.

*Smith v. Illinois* states in no uncertain terms that the United States Supreme Court has *not* retreated from the " 'bright-line rule' that *all* questioning must cease after an accused requests counsel." 105 S.Ct. at 494. By analogy, there is no reason for us to assume that the United States Supreme Court will retreat from the "bright-line rule" of *Miranda* and *Mosley*. Where, as here, the constitutional mandate as interpreted by the United States Supreme Court is *clear*, we continue duty bound to respect and uphold the lines drawn by the United States Supreme Court. Our Court of Appeals has done so. We should do no less.

STEPHENS, C.J., and AKER, J., join in this dissent.