Victor Dewayne TAYLOR, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 86–SC–481–MR.

Supreme Court of Kentucky.

Sept. 6, 1990.

As Modified July 3, 1991.

Dissenting Opinion of
Justice Leibson July 3, 1991.

Certiorari Denied Feb. 24, 1992.
See 112 S.Ct. 1243.

Frank W. Heft, Jr., Louisville (Daniel T. Goyette, Jefferson Dist. Public Defender, of counsel), for appellant.

Frederic J. Cowan, Atty. Gen., David A. Smith, Denise A. Garrison, Asst. Attys. Gen., Frankfort, Ernest A. Jasmin, Sp. Asst. Atty. Gen., Asst. Comm. Atty., Louisville, for appellee.

WINTERSHEIMER, Justice.

Victor Dewayne Taylor appeals from a judgment based on a jury verdict which convicted him of two counts of murder, kidnapping and first-degree robbery and one count of first-degree sodomy. He was sentenced to death on the murder and kidnapping convictions and to consecutive twenty year terms of imprisonment for the robbery and sodomy convictions.

Taylor and codefendant George Wade were charged with the murders, kidnapping and robbery of two high school students. The prosecution presented evidence in the form of a statement by Wade which indicated that he and Taylor kidnapped and robbed the two students who had gotten lost on their way to a football game. The young men had stopped at a fast food restaurant to ask directions when they were confronted by Taylor and Wade. Other witnesses indicated that Taylor had a

gun and forced the victims to get into their car and drive away. Wade in his statement said that he and Taylor robbed the boys and that he had removed both boys trousers, bound their ankles and gagged them in a Louisville alley. Wade's statement was that Taylor decided to kill the two victims because he was afraid they would identify them. Wade said he waited on a nearby street while Taylor shot both boys in the head.

Upon a change of venue both Taylor and Wade were tried in Lexington. Wade was tried separately and found guilty of two counts of murder, kidnapping, first-degree robbery, but was acquitted of sodomy. The jury recommended sentences of fifteen years on the robbery, twenty-two years on the kidnapping and life imprisonment on the murders. All sentences were to run concurrently, and Wade was sentenced to a total of life imprisonment.

At Taylor's trial Wade, who was tried first, cited his Fifth Amendment right against self-incrimination, and refused to testify. His edited confession was admitted against Taylor.

Taylor, through counsel, raises forty-four assignments of alleged error in this appeal. We have carefully reviewed all of the issues presented by Taylor and this opinion will concentrate on the question of the admissibility of the Wade confession and the propriety of the trial judge's refusal to grant a second change of venue. Allegations of error which we consider to be without merit will not be addressed here.

### I

■ The trial judge did not err by admitting Wade's statement into evidence pursuant to Federal Rule of Evidence 804(b)(3) which was adopted by this Court in *Maynard v. Commonwealth*, Ky.App., 558 S.W.2d 628 (1977); *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978) and reaffirmed in *Dodson v. Commonwealth*, Ky., 753 S.W.2d 548 (1988).

The trial judge in ruling on motions concerning Wade's unavailability as a witness and whether his statement was against his own interest found that FRE 804(e) provides in pertinent part that a witness is unavailable if he is exempted from testifying concerning the subject matter of his statement by a ruling of the trial judge on the grounds of privilege. The trial judge in the presence of Wade, but outside the presence of the jury, determined that Wade would rely on the Fifth Amendment privilege and that the privilege was valid because his conviction was pending on appeal. Accordingly, the trial judge found that Wade was unavailable as a witness pursuant to FRE 804(a)(1) and *Crawley, supra.*

The trial judge after hearing argument of counsel and considering the provisions of the Federal Rule of Evidence 804(b)(3) as well as Kentucky authority concluded that the out-of-court statement of Wade at the time of its making was so far contrary to Wade's penal interests and subjected him to criminal liability that a reasonable man in such a position would not have made the statement unless it was true. He further concluded that the admissions against Taylor in Wade's statement were essentially consistent with his sworn in-court testimony as well as the testimony of three other prosecution witnesses, and in the context of other admissions against Taylor, exclusion would appear to deprive the finder of fact of relevant and reliable evidence.

■ Trustworthiness of a hearsay statement against penal interest is a prerequisite to its admissibility. *Crawley, supra*, quoting from *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), set out the four factors the Supreme Court deemed relevant to the trustworthiness of such statements: (1) The time of the declaration and the party to whom made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is against the declarant's penal interest and (4) the availability of a declarant as a witness.

■ Wade's statement was properly admitted into evidence. His statement was made to the police prior to his arrest but after he had been picked up for questioning. He was Mirandized three times, informed that he failed a polygraph test and

identified in a lineup prior to his confession. His final waiver of rights was tape-recorded, reduced to writing and signed in the presence of two police officers. The mere fact that Wade had initially denied any involvement in the crimes and confessed only after receiving notice that he had been identified in the lineup does not render the confession involuntary. *Cf. Commonwealth v. Vanover*, Ky., 689 S.W.2d 11 (1985). There is no suggestion that Wade was attempting to curry favor from the arresting officer. He confessed without promises being made. While he was not under arrest, Wade certainly knew he was a suspect. The statement Wade gave to the police was corroborated in part by five different witnesses. Every material detail of Wade's confession was corroborated by independent testimony and physical evidence.

■ Wade's statement was against his own interest. His confession was not any less a statement against his own penal interest simply because it also implicated Taylor. Wade admitted that he actively participated in the kidnapping and robbery. He said that he bound, gagged and robbed the victims. He also described the events which culminated in the shootings. The determination of whether an out of court statement is against the declarant's penal interest does not require an assessment of the declarant's subjective motivation. The determination should be made upon an examination of the statement made and application of an objective measure of whether it is against penal interest. By such an assessment, Wade's confession was a statement against his own interest for the purpose of FRE 804(b)(3).

■ Federal Rule of Evidence 804(a), in relevant part, provides that a declarant is not available for the purposes of the hearsay rule if he:

1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

2) persists in refusing to testify concerning the subject matter of the declar-

ant's statement despite an order of the court to do so. . . .

Wade informed the Court that in spite of the prosecutor's proffered immunity he would invoke his fifth amendment privilege against self-incrimination if called to testify. The trial judge correctly determined that Wade who had a pending criminal appeal at the time was unavailable as a witness under FRE 804(a).

Courts are reluctant to admit hearsay evidence because of the its inherent unreliability. Numerous exceptions have been carved out of the general prohibition against admitting hearsay. FRE 804(b)(3), statements against penal interest, allows hearsay statements to be admitted if they are against declarant's penal or proprietary interest, trustworthy, and the declarant is unavailable. No lack of trustworthiness could be implied regarding the content of Wade's confession or the circumstances surrounding it. There was no factual basis for the presumptive suspicion that frequently relates to a codefendant's confession. Wade's confession was corroborated in every material detail by independent testimony and physical evidence. Wade was unavailable, his statement was against his own interest, and from the physical evidence, the testimony of witness and Wade's confession, it was reliable and trustworthy. The trial judge was correct in admitting Wade's statement. As a reviewing court, we find no reason to disturb the action taken. *Reichle v. Reichle*, Ky., 719 S.W.2d 442 (1986).

■ Taylor argues that the introduction of a nontestifying-codefendant's confession invariably results in a violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He also contends that Rule 804(b)(3) is unconstitutional. The trial judge correctly ruled that the edited confession was admissible in Taylor's separate trial. The confession was the last item of evidence presented by the prosecution in the case in chief. It was edited to delete all references to other crimes.

■ *Bruton, supra,* holds generally that a defendant's Sixth Amendment right

to confrontation is violated when he is directly incriminated by the confession of a nontestifying codefendant. The rationale for this general rule of constitutional law is the same as that underlying the general prohibition against hearsay evidence, that is the presumptive unreliability of an extrajudicial confession. *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), a conspiracy case, discussed the relationship between various Federal Rules of Evidence and the Confrontation Clause, and indicates that out of court statements are only presumed unreliable and the presumption may be rebutted by appropriate proof. It also recognizes the cumulative value of certain evidence. When taken together the two principles demonstrate that what may be unreliable in isolation may be probative when corroborated by other evidence. *Bourjaily* also indicated that the literal interpretation of the confrontation clause was too extreme and that the societal interest of accurate fact finding requires harmonization with the confrontation provision. Accommodation of these competing interests has in general required the prosecution to demonstrate both the unavailability of the witness and the indicia of reliability surrounding the out of court statements.

A number of federal circuit courts have followed the *Bourjaily* philosophy. *See United States v. Robinson,* 635 F.2d 363 (5th Cir.1981); *United States v. Katsougrakis,* 715 F.2d 769 (2nd Cir.1983); *United States v. Harrell,* 788 F.2d 1524 (11th Cir. 1986); *United States v. Kelley,* 526 F.2d 615 (8th Cir.1975).

A codefendant's confession is not per se untrustworthy but is only presumptively unreliable and the presumption may be rebutted. *Dodson, supra,* held that this type of evidence can be admissible if its presumptive unreliability is sufficiently rebutted by corroborating circumstances which clearly indicate its trustworthiness.

In view of the trial judge's holding that the statement came in as a recognized exception to the hearsay rule, we find no conflict with the confrontation clause. *See Crawley, supra; Bourjaily, supra.*

## II

■ The trial judge did not abuse his discretion when he overruled Taylor's second change of venue motion for lack of reasonable notice. Taylor admitted that his motion was filed late.

The prosecution was not given reasonable notice of the motion for a second change of venue. Accordingly without reasonable notification the Commonwealth could not present evidence in support of its opposition to the motion by subpoenaing witnesses to testify or otherwise prepare to contest the motion. *Sullivan v. Commonwealth,* 185 S.W. 134, 169 Ky. 797 (1916). Therefore the trial judge did not abuse his discretion by denying the motion. *Cf. Geary v. Commonwealth,* Ky., 503 S.W.2d 505 (1972). The argument that the prosecution received constructive notice is without merit.

■ It is unnecessary to consider the argument by Taylor that Kentucky Revised Statute 452.240 is unconstitutional. The statute provides that not more than one change of venue shall be allowed to any person or to the state in the same criminal action. Taylor had already been granted one change of venue from Louisville to Lexington. The trial judge did indicate when he denied the second change of venue that he would consider moving the trial if he discovered problems in seating an impartial jury.

In regard to the issue of juror bias, a careful examination of the extensive record of jury voir dire indicates that the trial judge took very extended precautions to insure the fairness of the jury panel. The prospective jurors were subject to general and individual voir dire regarding publicity about Wade's sentence and as to their ability to be impartial. All prospective members of the jury received a letter from the Court Administrator advising them not to read or discuss the Wade trial. They all indicated that they had followed the instructions of the court. The record clearly indicates that all twelve jurors demonstrated that they had little if any knowledge of either Wade or Taylor and only one juror

had even heard of the so-called Truth in Sentencing legislation. None of the responses indicated any degree of prejudice as a result of pretrial publicity. The selection of the jury was fair and impartial. Consequently there was no need for a second change of venue. *See Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977); *also Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981).

■ Under the trial court's instructions the appellant was sentenced to death four times, once each for murder *and* kidnapping as to each victim. The appellant argues that Section 13, the double jeopardy provision of the Bill of Rights in the Kentucky Constitution, and the 5th and 14th Amendments of the United States Constitution, prohibit imposing the death penalty for kidnapping *and* murder of the same victim in present circumstances. The appellant was death eligible for kidnapping under Kentucky law, KRS 509.040(2), *only* because he was found guilty of murdering the victims.

The defendants in *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989), like the present appellant, argued that double jeopardy principles forbid the imposition of the death penalty for murder and kidnapping, "when the same act of murder" provides the justification. Kidnapping is *only* a capital offense under Kentucky law "when the victim is not released alive," which "refers to the victim's death being caused by some aspect of the kidnapping, not to a fortuitous and unrelated circumstance." *Id.* at 372. Therefore, as *Cosby* states, "murder and kidnapping merge at the enhancement stage." *Id.* at 373.

The death sentence imposed on Taylor was not inappropriate, arbitrary, cruel, unusual or disproportionate. The death penalty statute was constitutionally applied. The mitigating circumstances did not outweigh the aggravating circumstances.

In making review required by K.R.S. 532.075(3), we find nothing in the record that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. The death sentence was not excessive or disproportionate

to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant. Those cases have been previously recited by this Court in *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988) and that list is incorporated herein by reference and our review is in accordance with K.R.S. 532.075(5). In addition, we have also considered the case of *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1989). We have conducted an independent review of the circumstances and conclude that they exceed any minimum justifying capital punishment.

While the judgment of conviction is affirmed, the Court vacates two of the four death sentences, being the two imposed on the kidnapping convictions, and remand is directed for resentencing on these charges as Class A felonies.

STEPHENS, C.J., and LAMBERT, REYNOLDS and SPAIN, JJ., concur.

LEIBSON, J., dissents by separate opinion, in which COMBS, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent for two reasons, both directed at the impermissible use of the out-of-court statement of the nontestifying co-defendant, George Wade:

1) As to that portion of Wade's statement inculpating Taylor as the murderer, no impartial observer can accept as fact that Wade intended to make a declaration against penal interest, as necessary to be admissible under FRE 804(b)(3);

2) Admitting this evidence violated the Confrontation Clause in the Sixth Amendment of the United States Constitution and Sec. 11 of the Kentucky Constitution.

Before an out-of-court statement of a witness is admissible as a declaration against interest, FRE 804(b)(3) states first it must be "at the time of its making so far contrary to" the declarant's penal interest "that a reasonable person in [his] position would not have made the statement unless he believ[ed] it to be true." The Majority has addressed this problem as a purely technical matter: Wade's depiction of how

Taylor murdered the victims exposed Wade to criminal liability for murder based on complicity (KRS 502.020). True, but the test for whether a statement is an exception to the hearsay rule under FRE 804(b)(3) is much less complicated: how would "a reasonable person in his position" view it at the time he made the statement; was Wade then seeking to inculpate himself in these murders or to exonerate himself? We have held in *Fisher v. Duckworth*, Ky., 738 S.W.2d 810, 815 (1987) that "the burden is on the party seeking to use this exception ... to first establish a basis" by proof the declarant had knowledge at the time he made the statement that it was against his interest. As stated in *Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir.1985):

> "Hearsay under the declaration against interest exception is unreliable unless the declarant is aware at the time of making the statement that it is against his interest."

And, as explained in the *Federal Rules of Evidence Manual*, 4th ed., Saltzburg and Redden, p. 940 (discussing "Declarations against interest"):

> "Whenever a statement against interest is offered, it is the job of the Trial Judge to determine whether the declarant was *under the impression* that the statement was against his interest *at the time he made it.*" [Emphasis added.]

An objective view of Wade's statement compels the conclusion that in the critical portion pertaining to the murders Wade did not intend to inculpate himself but, on the contrary, in general to disassociate himself from responsibility for the murders, and in particular to avoid the death penalty, the more serious consequence likely to flow from being directly involved. It is simply not credible for our Court to qualify statements obviously made to avoid the death penalty as admissible under a hearsay exception for statements against penal interest. To quote the critical portions of Wade's statement:

> Wade    And after we searched the car and everything you know, we was get-
>
> tin' ready to go ridin' and then, all of sudden you know....
>
> Duff    Well, wait a minute now, You and Vic were getting ready to go riding?
>
> Wade    Yeah. And then, Vic said uh, hey, you know they done seen us, like that. I said.... and I said man, that's, you know, that ain't nothin, like that. He said, but you know they done seen us. And uh....
>
> Duff    What did he mean by that?
>
> Wade    He said, they done seen us, you know.
>
> Duff    Right.
>
> Wade    They done seen our face.
>
> Duff    Okay.
>
> Wade    But I told him it wasn't nothin', you know.
>
> Duff    What do you think he meant by that?
>
> Wade    I couldn't tell you. I don't know. I don't know nothin'. He..man, he's wild man. And uh,....
>
> Duff    You mean Vic's wild?
>
> Wade    Yeah.
>
> Duff    Vic Taylor, is that who you're talking about?
>
> Wade    Yeah.
>
> Duff    Okay. Go on.
>
> ....
>
> Duff    Okay. Were they still alive at this point?
>
> Wade    Ah, yeah.
>
> Duff    Okay.
>
> Wade    They were still alive. So uh, like we walkin' away and uh, he said man, you know they done seen us man, people done seen us. I said man, it don't make no difference. Then, he told me to hold up for a minute. 'Cause we walkin' like uh, at the end of where, where they at. Where the car's parked at right there on the side of the building. We walkin' back down toward you know, goin' towards Preston Street.
>
> ....
>
> Wade    He said, hold up for a minute. And I, you know I hold up. I was waitin' right around uh, right on the end of the building. Right around the

corner where I was waitin' for him. He said, hold up. I asked him what he was gonna do. He just told me to hold up for a minute. And then, that's uh ... I heard, I heard that shot. I, I left. I didn't hear nothin' else. I just heard that shot. And I was gone. And....

Duff   Did you take off running?

Wade   Yeah. 'Cause I, you know, I didn't know what he was gonna do. And I heard another shot when I got to the end of the alley. I heard another shot.

Moody   This is uh, Sgt. Moody speaking. George, where were you standing exactly when you heard the first shot? Where were you standing when you heard the first shot fired?

Wade   Right around uh, right around the little ... it's a little building right there on the corner of the alley. Right there on the left hand ... yeah, on your left hand side from where they was. A little building. I was standin' right around the corner.

Moody   Okay. And where.... you stated that you ran. Which way did you run?

Wade   Out towards Preston. I, you know ... nah. No, I didn't. I ran out towards uh, ran out towards uh, what's, what's that? Caldwell. 'Cause it's Caldwell and Caldwell runs into Preston, you dig.

Moody   Okay. So, you're running towards Preston and Caldwell Street when, when you heard the first shot? You started running in that direction when you heard the first shot?

Wade   Yeah.

Moody   Okay. So, and then, as you were running, what happened or what took place then?

Wade   I heard another shot, you know. I knew what it was. I told him (inaudible). I said man, don't do that. 'Cause he uh, asked me. I said, don't do that man. Yeah. I said, nah, that ain't you know, it wasn't worth that. Plus they didn't have nothin'.

Moody   Okay.

Wade   They didn't have nothin' for real, for as you know, for it to be like that.

Moody   Okay. So, after you started running and heard the first.... second shot, then continue on. What happened?

Wade   We uh, after I heard the second shot, I see Vic come runnin' up behind me. I said, what did you do. I said.... he said man, you know what I done. He said, I, I shot them. Like that. He just come back laughin', you know and stuff like that. He was laughin' like, you know, he was crazy or somethin'.

In two recent Kentucky cases, *Dodson v. Commonwealth*, Ky., 753 S.W.2d 548 (1988) and *Barnes v. Commonwealth*, Ky., 794 S.W.2d 165 (1990), our Court reversed because of the use of out-of-court statements against the accused in circumstances much less oppressive than the present ones. The fact situation in *Dodson* was almost identical to what we have here, erroneous use of an out-of-court statement from a robbery confederate who "was called as a witness and refused to testify." In *Barnes* the fact situation was erroneous use against the accused of the victim's prior statement controverting the defense of accidental homicide. The statement was an affidavit from a divorce case filed by his wife two and a half years previously stating Barnes had "on numerous occasions physically thrown [the victim] out of [her] home, ... hit her and threaten[ed] to shoot [her] with his rifle or handgun." The circumstantial guarantees of trustworthiness for the affidavit in *Barnes* were much greater than in the present case. In *Barnes* we rejected a claim that the evidence qualified "under the present state of mind exception to the hearsay rule," stating the evidence does not "fit[ ] within a recognized exception" to the hearsay rule. 794 S.W.2d at 167. The claim in the present case that Wade's statement, quoted above, qualifies as a declaration against penal interest likewise does not "fit within a recognized exception" to the hearsay rule. Wade did not make the statement implicating the appellant until he had spent

more than ten hours in police custody, and had made numerous denials of any knowledge or participation in the crimes. He confessed only after he had been informed that he had failed a polygraph examination and had been identified by a witness.

It is difficult to understand how the same judges who authored and concurred in Majority Opinions in *Dodson* and *Barnes* can reconcile having done so with joining the present Majority Opinion which is authored by and follows closely the views expressed in the Dissents in those cases. The views taken here are in sharp conflict with the *Dodson* and *Barnes* opinions. We have expanded the "declaration against interest" exception to the hearsay rule all out of reason.

Next, this result is in conflict with the Confrontation Clauses found in both the Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution, which are, at the same time, both separate from, yet integral to, the hearsay exceptions. The landmark case holding the use of an out-of-court statement from a confederate is a violation of the Confrontation Clause is *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). *Douglas v. Alabama* was reversed because, as in the present case, the written statement purporting to be the confession of an accomplice was read to the jury after the accomplice who was called as a witness invoked his privilege against self-incrimination and refused to testify. Twenty years later *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), reaches the same conclusion. In *Lee v. Illinois* the trial court relied upon a co-defendant's confession as substantive evidence against Lee in violation of the accused's rights under the Confrontation Clause of the Sixth Amendment. In *Douglas v. Alabama*, the circumstances were substantially identical to the present case and in *Lee v. Illinois*, the circumstances were no different except that both defendants were tried in the same trial. This is a distinction without a difference insofar as the use of *one* defendant's statement *against* the *other*.

There is an exception made in a joint trial which has its genesis in language of the opinion in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), applied more recently in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) and *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), *reh. denied* 483 U.S. 1044, 108 S.Ct. 19, 97 L.Ed.2d 807 (1987). This exception permits the statement of a defendant to be used in a joint trial, but *only* against himself and not against his co-defendant. Any mention of the nonconfessing co-defendant must be carefully redacted to eliminate prejudice to the nonconfessing co-defendant from the unauthorized use of hearsay. The fact that the statement of a co-defendant, so carefully redacted that no prejudice inures to the nonconfessing co-defendant, is admissible in a joint trial adds *nothing* from which to infer that a nonredacted, accusatory out-of-court statement of a co-defendant is admissible as substantive evidence of guilt. Indeed, the opposite should be inferred from the *Bruton* rule.

It is apparent from the language in the Opinion that the Majority of our Court has misunderstood *Lee v. Illinois, supra,* as permitting use of a hearsay statement as "probative when corroborated with other evidence." Majority Opinion p. 76. The Majority opines the court can make an exception for out-of-court statements it believes "trustworthy" because corroborated by other evidence in the case, in this case statements Taylor purportedly made about the killings to other witnesses. We are not free by expanding exceptions to the hearsay rule to create exceptions to the Confrontation Clause. The teaching of *Lee v. Illinois* is to the contrary, that interpretation of hearsay exceptions can *inform* the reach of the Confrontation Clause, but cannot *control* it.

Before we assume that our Court can avoid the Confrontation Clause by expanding the definition of what qualifies as a declaration against penal interest, we should take heed of this footnote in *Lee v. Illinois:*

"We reject respondent's categorization of the hearsay involved in this case as a simple 'declaration against penal interest.' That concept defines too large a class for a meaningful Confrontation Clause analysis. We decide this case as involving a confession by an accomplice which incriminates a criminal defendant." 476 U.S. at 544, 106 S.Ct. at 2064, 90 L.Ed.2d at 528.

If some in the Majority doubt the limitations generated by the Confrontation Clause on our ability to expand hearsay exceptions against the criminally accused, such doubt should be dispelled by the most recent United States Supreme Court pronouncement on this subject in *Idaho v. Wright*, 497 U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), brought to our attention in the Petition for Rehearing. In *Idaho v. Wright* the United States Supreme Court reversed a conviction based on a hearsay statement qualifying under Idaho's "residual hearsay exception." [1] Just as we do in this case, in *Wright* the Idaho Supreme Court cited and then misapplied a caveat from *Lee v. Illinois* stating that, although hearsay, a statement may withstand Confrontation Clause challenge "if it is supported by a 'showing of particularized guarantees of trustworthiness'" [476 U.S. at 543, 106 S.Ct. at 2063, 90 L.Ed.2d at 528]. In *Idaho v. Wright*, the U.S. Supreme Court states:

"We agree that 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, but we think the *relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.*" 497 U.S. at ——, 110 S.Ct. at 3148, 111 L.Ed.2d at 655. [Emphasis added.]

Thus, while the Confrontation Clause does not foreclose use of traditional, firmly rooted and well-defined hearsay exceptions, it forecloses using new and expanded definitions of admissible evidence to impair Sixth Amendment rights.

While it would be proper to take into consideration the circumstances at the time Wade made his statement in deciding whether it was a declaration against penal interest, unfortunately these circumstances bear *none* of the indicia of reliability and trustworthiness required for making hearsay exceptions. He was then seeking to mitigate his criminal liability, not to expand it. Our Court finds some circumstantial guarantee of trustworthiness only by considering corroborating evidence from other persons, admissions made by Taylor on other occasions, matters entirely separate from the making of Wade's statement. This is *not* the theme of the so-called "particularized guarantees of trustworthiness" articulated in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and then quoted as stated above in *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

It should be abundantly clear that hearsay is permissible as an exception to the Confrontation Clause only in limited circumstances where it comports to a traditional, well-recognized and clearly defined hearsay exception. Unwisely, our Court in this Opinion has greatly expanded what qualifies as a declaration against interest. A state court may be free to expound and expand its own hearsay doctrine, even when it is unwise, but it is not free by doing so to restrict the reach of the Confrontation Clause. We have no power to impair the rights of the criminally accused guaranteed by the Confrontation Clause in the Sixth Amendment. Indeed, we lack authority to override the constitutional limits of Section Eleven of our own Constitution by finding the evidence "trustworthy" because there is other evidence of guilt. No light flashes on inside our head to tell us this statement is trustworthy; no bell rings to tell us it is not. If we judges decide to admit such statements on an ad hoc basis whenever we deem them sufficiently trustworthy because of other evidence, the system will soon fall apart.

1. Unlike Idaho, in Kentucky we do not accept the "residual hearsay exception" (*See Wager v. Commonwealth*, Ky., 751 S.W.2d 28 (1988)), so the evidence could not limp in on this crutch even if in *Idaho v. Wright* the U.S. Supreme Court had reached a different result.

The constitutional rule is the circumstances surrounding the taking of Wade's statement are the only evidence to be considered in determining its admissibility; these "particularized circumstances," standing alone, provide no indicia of reliability to render his accusations of Taylor admissible. The holding in *Wright* is "the use of corroborating evidence to support a hearsay statement's particularized guarantees of trustworthiness" is constitutionally impermissible. Yet that is exactly what our Court does in the Majority Opinion. *Wright* states:

> "Thus, unless an affirmative reason, *arising from the circumstances in which the statement was made,* provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement." 497 U.S. at ——, 110 S.Ct. at 3150, 111 L.Ed.2d at 656. [Emphasis added.]

The Majority Opinion mistakenly relies upon *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), as authority for a "philosophy" accommodating a balancing test between "societal interests" and the reach of the Confrontation Clause. This is a clouded view of the constitutional guarantee and a complete misunderstanding of the *Bourjaily* opinion. *Bourjaily* involved the crime of conspiracy and the traditional, well-established and deeply rooted hearsay exception codified in FRE 801(d)(2)(E) for a statement by a co-conspirator. Such a statement is not hearsay *if* made "during the course and in furtherance of the conspiracy." Statements taken from *Bourjaily* have been misapplied in our Majority Opinion. *Bourjaily* conforms to the limitations in *Douglas v. Alabama* and its progeny, including *Lee v. Illinois* and *Idaho v. Wright*. *Bourjaily* does *not* afford us a different view to choose from; it has no application to the facts at hand.

Although Wade's out-of-court statement was certainly not the only evidence to prove Taylor guilty of these killings, the Commonwealth has conceded it was a powerful conclusion to its case. If believed, it provided important incriminating details not brought out in any other evidence. Being objective, there is no way to qualify the error in this case as harmless using the "harmless beyond a reasonable doubt" requirement for constitutional error mandated by *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

I share the public's horror and outrage at these monstrous crimes. But we are not jurors free to decide based on what we think Taylor deserves. This brings to mind the warning of Justice Louis D. Brandeis in *Olmstead v. United States*, 277 U.S. 438, 479, 48 S.Ct. 564, 573, 72 L.Ed. 944, 957 (1928):

> "The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning, but without understanding."

We are judges charged with the duty to reverse and remand when confronted with prejudicial error. Recognizing my responsibility under the law, I dissent.

COMBS, J., joins this Dissent.