**Raymond Dale HARRISON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 91–SC–993–MR.**

Supreme Court of Kentucky.

May 27, 1993.

Pamela M. Workhoven, Michael Losavio, Louisville, for appellant.

Chris Gorman, Atty. Gen., Gregory C. Fuchs, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

REYNOLDS, Justice.

Raymond Dale Harrison appeals from a judgment, based on a jury verdict, which convicted him of being an accomplice to two burglaries in the first degree, one burglary in the second degree, and of being a persistent felony offender in the first degree, for which he was sentenced to imprisonment for 145 years.

Appellant was charged with aiding and assisting Donald Stepp in the commission of the burglaries. Harrison was represented by the same attorney that represented the co-defendant, Stepp. Stepp, who was indicted as the principal in all of the offenses, was tried and convicted prior to Harrison's trial. Appellant waived possible conflict of interest arising out of the dual representation.

Appellant contends the trial court erred in denying his motion to suppress a statement made by Stepp to Hickman County Sheriff Reilly. The disputed statement was obtained from Stepp following three burglaries in Hickman County, Kentucky, which Sheriff Reilly investigated. Guns that were stolen in the burglaries were found in Tennessee. Thereafter, the sheriff and a deputy travelled to the courthouse at Dresden, Weakly County, Tennessee, for a meeting with Stepp. At this meeting on the late afternoon of March 28, 1991, Stepp executed a written waiver of his Miranda rights and agreed to speak to Kentucky officers. The sheriff reduced to writing the statement which contained the information given by Stepp. However, Stepp declined to sign the statement which was dated and witnessed by the sheriff and deputy.

Appellant argues that the statement lacks reliability based upon the facts that it is an unsworn, out-of-court statement and that Stepp denies making the statement. Appellant emphasizes that the most impor-

tant indicia of unreliability was that no evidence existed to show that Stepp could either read or understand the statement. As to the latter argument, the evidentiary record contradicts such a position, as there is testimony that Stepp read the Miranda statement out loud and stated that he understood it.

■ The credibility of the statement is at issue, but absent any circumstances not disclosed in the record, the decision of the trial court should not be disturbed. *Edwards v. Commonwealth*, Ky., 500 S.W.2d 783 (1973). When the trial court admitted Stepp's statement, it was in effect a ruling that the confession was voluntary. Considering the totality of the circumstances and factors involved therein we find the trial court did not err in admitting the oral statement and written statement. *Walker v. Commonwealth*, Ky., 561 S.W.2d 656 (1977).

■ Harrison asserts that he was denied the right to cross-examine witnesses against him and that it was reversible error to permit the Commonwealth to call Stepp to the stand citing *Higgs v. Commonwealth*, Ky., 554 S.W.2d 74 (1977). Upon review we find the case of *Higgs v. Commonwealth* to be clearly distinguishable. In *Higgs* the co-indictee specifically stated, "I refuse to answer on the grounds that it might incriminate me." *Id*, at 75. Furthermore, the prosecutor was well aware that co-indictee would invoke the privilege. And most importantly, the statement involved was not witnessed by police officers and contemporaneously reduced to writing in order to supply further indicia of reliability, as it was in the case at bar.

In order to assess appellant's argument, some preliminary details must be recited: Stepp's statement was made to the Hickman County Sheriff and his deputy prior to his arrest, but following a request for Stepp to be available for questioning. He was Mirandized and his waiver of right was reduced to writing and signed in the presence of the police officers. The only suggestion that Stepp may have attempted to curry favor was that he would send word to try and obtain the return of more of the

stolen property. The facts of Stepp's confession were corroborated by testimony and physical evidence. At trial, Stepp was called to the stand and was administered the oath by the bailiff. Neither he nor his attorney asserted reliance on Fifth Amendment grounds. Stepp stated that he did not want to testify. His responses to questions were simply noted by the court reporter as being "no audible response." At the conclusion of the Commonwealth's unanswered questioning of Stepp, the court inquired of appellant if there were any questions, to which appellant replied "no."

■ At common law, trustworthiness of a hearsay statement against penal interest is a prerequisite to its admissibility. *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978). The factors deemed relevant to the trustworthiness of such statement in the present case are: 1) The time of the declaration and the party to whom made; 2) the existence of corroborating evidence in the case; 3) the extent to which the declaration is against the declarant's penal interest and 4) the availability of a declarant as a witness. *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1991); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

■ In evaluating the admissibility of the statement, we refer to the Kentucky Rules of Evidence, which although not in effect at the time of appellant's trial, may be viewed as a codification of Kentucky Common Law and are applicable in this instance. A review of the oral and unsigned written statement reflects that it qualifies as a statement against declarant's interest as defined in KRE 804(b)(3) which reads:

> Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A state-

ment tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

■ While neither Stepp nor his counsel technically invoked Stepp's Fifth Amendment right, it is certain that he was unavailable as a witness pursuant to KRE 804(a)(1). Stepp's statement was so far contrary to his penal interest that he was subjected to criminal liability and a reasonable man in such a position would not have made this statement unless it was true. Although not a prerequisite for admissibility, since declarant was not being put in jeopardy at this time, there was ample corroborating evidence such as the testimony of the prosecution witnesses to clearly indicate the statement was trustworthy under KRE 804(b)(3).

While courts may be reluctant to admit hearsay evidence because of its inherent unreliability, there are numerous exceptions. KRE 804(b)(3), statements against penal interest, makes provision for an allowance of hearsay statements. There is no reason in this case to disturb the action taken by the trial court. *Reichle v. Reichle*, Ky., 719 S.W.2d 442 (1986).

■ Harrison maintains that an introduction of Stepp's confession results in a violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant was granted the opportunity to question Stepp at trial, but declined to do so. Therefore, it remains questionable as to whether or not the appellant has standing to raise this issue. But assuming arguendo that appellant was denied the right to cross-examine Stepp, the following reasoning applies. Generally, a defendant's Sixth Amendment right to confrontation is violated when he is directly incriminated by a confession of a nontestifying co-defendant. Out-of-court statements may be presumed unreliable, but the presumption may be rebutted by appropriate proof. What may be unreliable in isolation may be probative when corroborated by additional evidence. Thus, a literal interpretation of the confrontation clause is too extreme and societal interest of accurate fact finding requires harmonization with the confrontation provision. *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Taylor*, 821 S.W.2d at 72.

We believe there was sufficient corroboration of Stepp's statement to establish its trustworthiness insofar as it incriminated the appellant. The Commonwealth's evidence disclosed the description and identifying features of appellant's automobile which was in a victim's driveway, plus noting several unique physical characteristics of appellant at the time. Further, by determining ownership registration of the vehicle plus appellant's relationship with the witness, Stepp, as his oft-repeated driver, the Commonwealth implicated Harrison as an accomplice/conspirator. Contrary to appellant's assertion, *Dotson v. Commonwealth*, Ky., 753 S.W.2d 548 (1988), does not preclude the utilization of the statement made by Stepp to the sheriff.

■ It was not error to deny appellant's motions for a directed verdict. Appellant voiced no objection to the giving of instructions based upon the failure of the proof. *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977). Sufficient evidence existed to submit the case to the jury. In addition to the recitation of the evidence under the first argument, we note that the identified firearms stolen from the dwelling houses in Hickman County, Kentucky, were located in a vacant building within close proximity and sight of Harrison's home place in rural Tennessee. A reasonable juror could fairly find appellant guilty beyond a reasonable doubt. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991).

■ The trial court did not err by permitting Commonwealth's attempted interrogation of Stepp as a hostile witness. Leading questions, although unanswered, were therefore permissible. CR 43.05. Appellant objected to Stepp being in shackles and testifying, and objected to him being called as a witness. The record does not support appellant's statement that

Stepp took the witness stand in shackles. To the contrary, he was permitted to talk to his own attorney (in chambers) and the court ruled that the shackles would be removed. Stepp, who had previously testified at a suppression hearing, denied making a statement to the sheriff. Contrary out-of-court statements by a Commonwealth witness, albeit hostile, who, at this time, refused to implicate appellant, were admissible as substantive evidence. *Askew v. Commonwealth*, Ky., 437 S.W.2d 205 (1969).

▮▮▮▮ Although appellant maintains it was error to permit the Commonwealth to recall Sheriff Reilly as a witness after Stepp had been questioned, appellant waived his right to assert error at the appellate level by failure to object to the recall of Sheriff Reilly as an impeaching witness. A new theory of error cannot be presented on appeal. *Ruppee v. Commonwealth*, Ky., 821 S.W.2d 484 (1991); *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280 (1980); RCr 9.22. Appellant's only objections during the recall of Sheriff Reilly were that of hearsay, and the utilization of Mr. Harrison's name in lieu of Mr. Stepp's name. This latter misidentification was clearly and adequately clarified by the court's admonition.

Appellant states that there was a cumulative effect of the preceding errors which prevented a fair trial. Upon review the unusual aspects of this case do not render the trial proceedings and rulings unfair. No errors exist under the facts of this case that warrant reversal.

▮▮▮▮ Appellant's sentence was not disproportionate to his crime in violation of the Eighth Amendment of the United States Constitution and Section 17 of the Kentucky Constitution. Harrison was an accomplice in three burglaries and his status as a persistent felon provided the basis for his enhanced sentence. Although it appears that the argument has not been properly preserved, appellant's sentence was within the range of punishment authorized by the legislature. KRS 532.080 imposes no limitation on the term of years for PFO I enhancement of a Class B felony. *Hampton v. Commonwealth*, Ky., 666 S.W.2d 737 (1984). A life sentence for a recidivist offender was affirmed in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

Appellant's reliance upon *Workman v. Commonwealth*, Ky., 429 S.W.2d 374 (1968), in order to emphasize that a sentence of 145 years amounts to cruel and unusual punishment and a violation of the Eighth Amendment to the United States Constitution and Section 17 of the Kentucky Constitution, is misplaced. *Workman* relates to a juvenile offender. Neither appellant's age nor litany of felony convictions bears any relationship to the authority cited.

The judgment is affirmed.

STEPHENS, C.J., and LAMBERT, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion, in which COMBS, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

When all is said and done, Harrison was convicted by inadmissible, impermissible hearsay: the unsworn, verbal, pre-trial statements his codefendant, Stepp, reportedly made to Sheriff Riley, who then testified at Harrison's trial that Stepp admitted to three burglaries and implicated Harrison as his accomplice. Stepp denied making these statements at a pre-trial suppression hearing and refused to testify at Harrison's trial. Through alibi witnesses, Harrison claimed he was elsewhere when the burglaries occurred.

Sheriff Riley of Hickman County, Kentucky, testified he interviewed a reluctant Stepp at the Weakley County, Tennessee jail, and while Stepp was negotiating with the Sheriff over whether to make a formal statement at a later date, the Sheriff took some preliminary notes which he *later* organized into a written statement, from which he then testified at Harrison's trial.

Sheriff Riley's testimony against Harrison defied the rules of evidence and denied the accused's basic constitutional right to confront Stepp, who was his accuser according to Sheriff Riley. Harrison was convicted on hearsay, and therefore his

conviction should be reversed, but the Majority Opinion escapes this syllogism by using a confused, imprecise version of the facts and then stretching the hearsay exception for declarations against penal interest to fit the situation. Preserving the integrity of the law of evidence and the vitality of the Confrontation Clause is more important than affirming Harrison's conviction.

At the pre-trial suppression hearing to adjudicate the admissibility of the testimony of Sheriff Riley about Stepp's incriminating statements, the Commonwealth freely stated that, if the court ruled the testimony from Sheriff Riley admissible, the Commonwealth wanted to sever the Stepp trial from the Harrison trial so that Stepp's statements could be used against Harrison as well as Stepp, to avoid the decision of the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). As we stated in *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367, 370 (1989):

"The fundamental premise in *Bruton v. United States, supra*, is that the confession of a codefendant when utilized as evidence in a joint trial is prejudicial hearsay as to the nonconfessing defendant to the extent that it incriminates him, and cannot be used unless the name of the nonconfessing defendant can be so redacted or deleted that its use is harmless beyond a reasonable doubt. Otherwise, it violates the accused's fundamental right, guaranteed by the Sixth Amendment, to be confronted by the witnesses against him."

The Commonwealth Attorney, the trial court, and now this Court, have circumvented the constitutional premise expressed in *Bruton* and followed in *Cosby*. The principle involved, the right guaranteed to the criminally accused by the Sixth Amendment "to be confronted with the witnesses against him," and by our Kentucky Constitution in Section 11 "to meet the witnesses face to face," cannot be evaded by the purely technical and meaningless device of severing the trial of codefendants. This fundamental constitutional premise so important to our liberty is being denigrated to an empty phrase. Severing

trials of codefendants is used when necessary to protect the rights of a defendant against the use of evidence admissible only against a codefendant; it was never intended as a method to render admissible evidence otherwise inadmissible. It should be obvious that any evidence inadmissible against a particular defendant at a joint trial is likewise inadmissible at a separate trial.

The case before us is not complicated. At Harrison's trial, the Commonwealth called Stepp as a witness, and Stepp refused to testify. Stepp's attorney had told the court at the pre-trial suppression hearing that "at trial we are going to invoke the Fifth and not testify." Severing the trials changed nothing; no one suggests Stepp had lost the privilege against self-incrimination when asked to take the stand at Harrison's trial.

At Harrison's trial Stepp *refused* to be sworn, stating "I don't want to testify"; he *refused* to answer any questions; indeed, he even *refused* to sit in the witness chair. The court reporter recorded his refusal to testify by noting after each question:

"A. (No audible response.)"

Stepp refused to testify in every sense of the word. The Commonwealth argues the record is not entirely clear on this point, but this is the only possible good faith interpretation of the record before us.

The situation is no different than in *Commonwealth v. Brown*, Ky., 619 S.W.2d 699, 701 (1981), where "[a]t a pre-trial hearing, Owens and Furman [Brown's codefendants] indicated that they would refuse to testify on the grounds of their Fifth Amendment and Ky. Const. Sec. 11 privileges against self-incrimination." The Commonwealth then proposed to sever the cases and then call them as witnesses against Brown at his trial, and to use their statements if they refused to testify. The trial court properly rejected this procedure. When the Commonwealth sought a certification of law, Justice Lukowsky, speaking for this Court on a better day, stated:

"The trial court properly ruled that the statements of Owens and Furman would be inadmissible if they refused to testify at Brown's trial...."

The Commonwealth asserts that, as soon as the accomplices take the stand and refuse to testify, the prosecutor may proceed to impeach their silence by introducing their confessions as prior inconsistent statements under the doctrine established in *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). The Commonwealth not only misconstrues *Jett*, but fails to grasp the rationale behind its requirements.

*Jett* establishes that the effect of prior inconsistent statements once admitted into evidence, is not limited to impeaching the credibility of witnesses. It allows such statements to be considered as substantive evidence when a witness is available and subject to cross-examination. *Jett*, supra at 792. *If a witness remains silent he makes no statement. Consequently, there is nothing with which the prior statement can be inconsistent.... the probative effect of · the prior statement never ripens into an issue." Id.* at 703–04. [Emphasis added.]

Speaking to the hearsay exception for statements against penal interest, the device used here to circumvent the hearsay rule, Justice Lukowsky's Opinion cites *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978), as authority that the untried codefendant is "unavailable as a witness for the purpose of invoking *Jett*," and then concludes:

"The basis for the requirement of availability for cross-examination is self-evident. A criminal defendant's inability to cross-examine a witness regarding extrajudicial statements denies him the right of confrontation secured by Section 11 of our Constitution and the Sixth Amendment to the federal Constitution. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Such statements are consequently inadmissible. *Owsley v. Commonwealth*, Ky., 458 S.W.2d 457 (1970).

To hold otherwise would be patently unfair to the defendant. The witness is effectively not there. The defendant is in an unduly disadvantageous position to counter either the making or the truth of his statements. It is reasonable to infer that the introduction of a statement could easily lead to the jury's believing that the witness made it, and his refusal to testify could result in their improperly inferring that it was true. *Douglas*, supra 380 U.S. at 419, 85 S.Ct. at 1077." *Brown*, supra at 704.

This case is another move backward down the slippery slope begun in *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1992). The *Taylor* Majority upheld a similar procedure, permitting the Commonwealth to evade the constitutional principles enunciated by the United States Supreme Court in *Bruton*, and by our Court in *Cosby*, by utilizing a purely technical device, severing the trial of codefendants. There is no way that this device can render inadmissible hearsay admissible, or cross the still higher threshold represented by the accused's constitutional right to confront the witnesses against him.

*Taylor* involved two vicious, inexcusable, shocking murders. It proves the old adage: hard cases make bad law. *Taylor* held that a statement by Wade, a codefendant, fingering Taylor as the triggerman while painting Wade as a reluctant accomplice, was admissible under the exception to the hearsay rule that pertains to statements against penal interest made by a declarant now unavailable. *Taylor* then went still another step, declaring such statements do no violence to the accused's constitutional right to confront the witnesses against him, thus disregarding the longstanding mandate of *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the more recent reaffirmation of the *Douglas* principle involved in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and the footnote in *Lee v. Illinois*, 476 U.S. 530, 544, n. 5, 106 S.Ct. 2056, 2064, n. 5, 90 L.Ed.2d 514, 528, n. 5 (1986):

"We reject respondent's categorization of the hearsay involved in this case as a simple 'declaration against penal interest.' That concept defines too large a class for a meaningful Confrontation Clause analysis." *Id.*

These United States Supreme Court cases hold that hearsay is permissible as an exception to the Confrontation Clause only in limited circumstances "where the evi-

dence falls within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Statements against penal interest are a relatively new expansion of the common law exception for a declarant's pre-trial statement where, when at the time it was made, it was against his pecuniary or propriety interest, and the declarant is unavailable as a witness at trial. Its use is narrowly circumscribed.

Assuming for argument's sake that a statement against penal interest now qualifies as a "firmly rooted hearsay exception," there is no way that the statements attributed to Stepp by Sheriff Riley, implicating Harrison as well as himself in the burglaries under investigation, meet the standard that applies to admitting evidence of this nature.

"United States Supreme Court decisions as well as decisions from the courts of appeals indicate that custodial statements implicating a third person do not fall within a firmly rooted hearsay exception." *Olson v. Green*, 668 F.2d 421, 427–28 (CCA 8, 1982), summarizing cases cited therein.

The rule requires fact-finding. As stated in KRE 804(b)(3):

"A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

In *Idaho v. Wright, supra*, 497 U.S. at 819–20, 110 S.Ct. at 3148–49, the United States Supreme Court explains what is meant by "corroborating circumstances" in these words:

"The State responds that a finding of 'particularized guarantees of trustworthiness' should instead be based on a consideration of the totality of the circumstances, including not only the circumstances surrounding the making of the statement, but also other evidence at trial that corroborates the truth of the statement. We agree that 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, but we think the relevant circumstances include only those that sur-

round the making of the statement and that render the declarant particularly worthy of belief. . . .

In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial."

To review the "relevant circumstances . . . that surround the making of [Stepp's] statement":

Stepp was being interviewed about a Kentucky crime in a Tennessee jail. He was trying to evade making a statement while, at the same time, ingratiating himself with the Kentucky Sheriff, by suggesting that while not prepared to give a statement, he would probably make one later. At the suppression hearing Stepp vehemently denied making any of the statements to Sheriff Riley that the Sheriff reported. The Sheriff does not claim he reduced Stepp's statements to writing as they were being made, claiming instead that he took some notes which he later developed into a statement. The statement as written up is *not* in Stepp's words, but in the Sheriff's: "Stepp said" thusly; or "Stepp advised" thusly; or "Stepp remembered" thusly.

It is quite clear the statement was not written up until some time after the interview took place because the interview was in Weakley County, Tennessee, before Stepp was arrested, but the statement refers to his later arrest, and to Stepp's failure to contact Sheriff Riley later, as he promised to do in his statement:

"Stepp was arrested by Graves Co. Sheriff Dept. He was to contact us next day and give a better statement. He did not contact us."

The standards set for judging the admissibility of a declaration against interest relate only to the circumstances surrounding the "making of the statement." The Majority Opinion disregards these circumstances and looks instead to corroborating circumstances unrelated to the making of the statement to make it admissible. The Majority Opinion relies on evidence that the burglaries occurred, evidence that a car

similar in color to Harrison's car was seen near one of the burglaries, and evidence that stolen property was found in a vacant house near where Harrison lives, as the kind of "relevant circumstances" justifying admitting Sheriff Riley's testimony as to what Stepp said about Harrison's participation in the burglaries. This kind of corroborating evidence has nothing whatsoever to do with the kind of relevant circumstances surrounding the taking of a statement referred to in the hearsay exception for declarations against penal interest. This case has *none* of the kind of relevant circumstances surrounding the making of the statement which would justify Sheriff Riley testifying about what Stepp said about Harrison's involvement in these burglaries.

Before we reversed direction in *Taylor v. Commonwealth, supra,* we had a well-established line of cases holding evidence of this nature inadmissible, and reversing where it was admitted. In addition to *Commonwealth v. Brown, supra,* and *Crawley v. Commonwealth, supra,* these cases included: *Owsley v. Commonwealth,* Ky., 458 S.W.2d 457 (1970); *Higgs v. Commonwealth,* Ky., 554 S.W.2d 74 (1977); and, more recently, *Dodson v. Commonwealth,* Ky., 753 S.W.2d 548 (1988). We have disregarded such authorities without overruling them. We have invented a way around the law of hearsay and the confrontation clauses in our federal and state constitutions.

What is wrong with this case? Reduced to its ABC's, Harrison was convicted on second-hand information: the truth of Stepp's accusations against him, as reported by Sheriff Riley. Riley could be cross-examined about whether Stepp imparted this information, but Stepp could not be cross-examined about the truth of the matters asserted. This second-hand information from Riley is called "hearsay" at common law. Hearsay is unreliable; it is untrustworthy regardless of how judges may view it in any particular case. Blackstone referred to cross-examination as the great engine of the common law. The confrontation clauses in our federal and state constitutions are designed to protect that engine. We have shut off the engine.

As I stated in my Dissent in *Taylor v. Commonwealth,* 821 S.W.2d at 81:

"If we judges decide to admit such statements on an ad hoc basis whenever we deem them sufficiently trustworthy because of other evidence, the system will soon fall apart."

As I wrote in conclusion in *Taylor:*

"We are judges charged with the duty to reverse and remand when confronted with prejudicial error. Recognizing my responsibility under the law, I dissent."

COMBS, J., joins this dissent.