**Roger Dale CRAWLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

**James T. WILLIAMS, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Supreme Court of Kentucky.

July 3, 1978.

Rehearing Denied Aug. 22, 1978.

Terrence R. Fitzgerald, Daniel T. Goyette, and Richard L. Receveur, Louisville, for appellant Roger Dale Crawley.

Steven J. Kriegshaber, Louisville, for appellant James T. Williams.

Robert F. Stephens, Atty. Gen., Rickie L. Pearson, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

In these consolidated cases Roger Dale Crawley and James T. Williams appeal from judgments of convictions imposing a prison term of 35 years each on a charge of first-degree robbery enhanced on persistent felony offender charges in conformity with a jury's verdict.[1] Crawley and Williams prosecute separate appeals which are consolidated for review. They assign as error the following points in which the issues and facts apply concurrently to each: (1) they were denied the right to a speedy trial; (2) the trial court failed to grant each a fair and full suppression hearing in regard to eyewitness identification; (3) the trial court erred in permitting the introduction of evidence not relevant to the robbery. Crawley assigns as additional errors the following points: (4) the trial court erred in refusing to admit affidavits as the testimony of missing witnesses; (5) the trial court erred in excluding evidence that the co-defendant, Williams, admitted commission of the robbery with a person other than Crawley; (6) the evidence failed to establish that Crawley was 18 years of age at the time of the commission of the first felony offense relied on to enhance his punishment; (7) the trial court erred in admitting in evidence an additional felony conviction that did not apply under the statute for the enhancement of punishment. Williams assigns as an additional error the following point: (8) the trial court erred by not excluding evidence obtained in an illegal search and seizure. This court has considered the facts and law applicable to issues 2, 3, 4, 7, and 8, and find them to be without merit. As to issues 1, 5 and 6, this court deems it appropriate to discuss the relevant facts and law in some detail in order to provide guidelines for future trials.

On the evening of September 29, 1975, a Majik Food Mart on Manslick Road in the city of Louisville, was robbed by a white male who was later identified as Crawley, and a black male later identified as Wil-

1. KRS 515.020 (first-degree robbery); KRS 532.080 (persistent felony offender).

liams. While Crawley paced back and forth in front of the store, Williams entered and asked Mrs. Maddox, the manager, for a package of cigarettes. When she turned around the black male pointed a pistol at her and said, "That's right baby, this is a hold-up." He ordered Mrs. Maddox and three other customers to lie on the floor. Mrs. Maddox testified she heard a man come into the store. He stood beside her. Although she could only see his pants, she could tell they were not the same as those worn by the black man. The two men ransacked the cash register. The black man stood on Mrs. Maddox's back and ordered her to open the safe. She told him she had no key. At that point she heard the door open and looked up and saw the white man running toward a blue 1967 Thunderbird, which she had previously observed sitting alongside the Majik Mart. Upon hearing the car door open and the horn sound, she said, "That black son-of-a-bitch is gone." To her chagrin, she saw him standing beside her and hastily fell to the floor again. When he finally left, Mrs. Maddox called the police and gave them a thorough description of the men and the automobile.

Based upon the information given by Mrs. Maddox the police officers, about an hour after the robbery, located the 1967 Thunderbird parked near a Convenient Food Market. A black male was sitting in the front seat of the automobile and a white male was standing beside it. They saw a shotgun on the back seat. One of the officers arrested the black male and "frisked" him. He then searched the automobile and found a .22 caliber chrome pistol under the seat where the black man sat. He also found in the glove compartment another box containing $80.63 which had been taken from the Majik Mart cash register. Another officer arrested the white male. They were both charged with carrying a concealed deadly weapon. The two suspects were taken to a police station for a line-up. Mrs. Maddox viewed two line-ups. One consisted of five white males; the other of four black males. She immediately identified Crawley and Williams as the rob-

bers. After the line-up Williams was searched; a key identified as that to the Majik Mart, and four 10-dollar bills were found. The four 10-dollar bills were stolen from Mrs. Maddox's billfold.

■ Crawley and Williams first argue they were denied the right to a speedy trial. The record reveals they were each arrested on September 29, 1975, and were indicted on January 15, 1976. The trial began on August 22, 1977. Crawley and Williams contend that the delay of 22 months from the date of their arrest until the date of trial deprived them of the right to a speedy trial in violation of the right guaranteed by the 6th and 14th Amendments of the United States Constitution, and Sec. 11 of the Kentucky Constitution. The United States Supreme Court has held that four factors must be balanced in determining whether the right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors are: the length of the delay, the reasons for the delay, the defendant's assertion of the right to a speedy trial, and prejudice suffered by the defendant. This court has indicated in prior cases, most recently in *McDonald v. Commonwealth*, Ky., 569 S.W.2d 134 (1978), that this balancing test is not a precise determination, but turns upon the particular facts of each case. In this case the record is not clear as to reasons for the delay, although at trial the Commonwealth's Attorney stated that part of the difficulty was in obtaining the presence of the chief prosecuting witness who had moved to Mississippi. On three occasions the case was continued on the motion of the Commonwealth. The trial court on its own motion advanced the trial date on three occasions. In their briefs it is argued that Williams was responsible for the delay engendered on April 5, 1977, when his attorney withdrew. The record does not reflect any motion for a continuance on the part of Crawley. Another reason argued by the Commonwealth on Crawley's and Williams' motion to dismiss was that they each had made offers of negotiations to plea bargain, thereby mak-

ing it unnecessary to have Mrs. Maddox appear as a witness at trial. There is no charge by either Crawley or Williams that the Commonwealth improperly delayed the trial of the case.

The record reflects that Crawley filed a written motion to dismiss for denial of a speedy trial on February 7, 1977, some 16 months after the arrest. Williams first asserted his right to a speedy trial on June 7, 1977, some 19 months after his arrest.

Crawley and Williams both contend they were prejudiced by the delay in that the pending charges resulted in parole violations of other charges. While the record does not contain any evidence on this contention, it is clear that both Crawley and Williams were incarcerated in the penitentiary at Eddyville throughout the whole proceedings. Crawley alleges that his alibi defense was impaired by the delay because his witness, Earl Morgan, could not be located at the time of trial. Orders of attendance were issued for Morgan, who was also an inmate at Eddyville, each time the case was assigned for trial. However, there was no order issued prior to the trial date of August 22, 1977. An investigator from the Louisville Public Defender's office testified that on August 5, 1977, he had gone to Morgan's home in Maysville, but could not locate him. It is apparent that at that time Morgan had been released from Eddyville. The record fails to show that any subpoenas were issued for Morgan's attendance. The record is abundantly clear that Crawley failed to exercise due diligence to obtain the presence of Morgan for the August trial date. The pretrial incarceration of Crawley and Williams cannot be said to be prejudicial in light of their status as parole violators. It is also noted that Crawley and Williams both were slow to assert their right to a speedy trial. This court is of the opinion that under the particular facts of this case the delay of 22 months is not so prejudicial as to require the dismissal of the indictment. In *McDonald, Supra,* a three-year delay was held to be non-prejudicial.

A pretrial conference between Crawley, his lawyer David Lewis,[2] and the Commonwealth's Attorney was held sometime in 1976. The co-defendant Williams was brought into the conference room. He spontaneously stated that he and someone else had committed the robbery. Pointing to Crawley he said: "This was not the man with me; it was another man." At trial, counsel for Crawley was not permitted to introduce this declaration in evidence. Crawley's trial counsel was permitted to call David Lewis as a witness who by avowal testified concerning the proceedings at the pretrial conference. Crawley contends that the exclusion of the exculpatory evidence deprived him the constitutional right to present a defense and denied him a fair trial.

The evidence sought to be introduced was hearsay and admissible only under one of the exceptions to the hearsay rule. The applicable exception is declarations against interest. These are statements which at the time they are made are contrary to the declarant's pecuniary or proprietary interest and are admissible if the declarant is deceased at the time of trial. Lawson, *Kentucky Evidence Law Handbook,* Sec. 8.40.

This jurisdiction along with others has excluded out-of-court statements against a declarant's penal interest, that is, a statement which could subject the declarant to criminal liability. Eighty-five years ago this court held that the defendant in a homicide case was not allowed to introduce evidence that another man, dead at the time of trial, had confessed to the crime. *Davis v. Commonwealth,* 95 Ky. 19, 23 S.W. 585 (1893). *Davis, Supra,* has not been overruled.

The United States Supreme Court has held that the application of such a rule violates due process. *Chambers v. Miss.,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In that case the court considered a hearsay exception in Mississippi similar to Kentucky's hearsay exception. Mississippi allowed the introduction of declarations against pecuniary interest only. Thus,

---

2. Lewis was replaced by Attorney Richard Receveur in November, 1976.

Chambers could not introduce testimony of three witnesses who were told by one McDonald that he and not Chambers had killed Officer Liberty. The Supreme Court assessed this testimony, determined it to be reliable, and reversed because Chambers had not been allowed to present evidence crucial to his defense.

Under the new Federal Rules of Evidence the exception to the hearsay rule was broadened. Rule 804(b)(3) provides:

"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

It is noted that the final sentence of Federal Rule 804(b)(3) requires corroborating circumstances before a declaration against penal interest may be admitted. This requirement seeks to remedy fears that such testimony will be unreliable. The United States Supreme Court in *Chambers, Supra,* spoke of the reasons behind the exclusion of such statements:

"Exclusion, where the limitation prevails, is usually premised on the view that admissions would lead to the frequent presentation of perjured testimony to the jury. It is believed that confessions of criminal activity are often motivated by extraneous consideration and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interests."

■ Trustworthiness of a statement against penal interest is a prerequisite to its admissibility. In *Chambers, Supra,* the United States Supreme Court set out four considerations relevant to the trustworthiness of such statements: (1) the time of declaration and the party to whom made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; (4) the availability of the declarant as a witness. When these considerations are applied to Williams' statement it is clear that the necessary element of reliability is absent. The statement that Williams committed the robbery with someone other than Crawley was made sometime in 1976, several months after the commission of the robbery and several months before trial. There is nothing in the record to indicate that Williams made the statement to any other person or at any other time.

■ This court is of the opinion that the requirements of Federal Rule 804(b)(3) offer adequate safeguards for the exclusion of unreliable statements. This court now adopts the broader exception for declarations against interest outlined in Federal Rules of Evidence 804(b)(3), as well as the broader unavailability definition in Federal Rules of Evidence 804(a). Applying this rule to Williams' purported exculpatory statement, it is this court's view that Williams' statement was properly excluded because there were no corroborating circumstances clearly indicating the trustworthiness of the statement. It is further noted that Williams was present in the court room, but due to his assertion of the privilege not to take the witness stand, he was not available for cross-examination. (The unavailability of the declarant is a prerequisite to the introduction of declarations against penal interest under Federal Rules of Evidence 804(b)(3)). All other cases in this jurisdiction expressing a view to the contrary are overruled.

■ Crawley's final argument is related to his conviction as a persistent felony offender. He contends that the evidence failed to prove beyond a reasonable doubt that he was over 18 years of age at the time of one of the prior felony convictions. The

persistent felony offender statute in effect at the time of the commission of the robbery of the Majik Mart in September 1975, provided:

"(2) A persistent felony offender is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having previously been convicted of two (2) or more felonies. As used in this provision, a previous felony conviction is a conviction of a felony in this state or conviction of a crime in any other jurisdiction provided:

(a) That a sentence to a term of imprisonment of one (1) year or more or a sentence to death was imposed therefor; and

(b) That the offender was over the age of eighteen (18) years at the time the offense was committed; and

(c) That the defendant was imprisoned under sentence for such conviction prior to commission of the present felony." KRS 532.080(2).

Evidence was introduced that Crawley was convicted and sentenced on a charge of storehouse breaking on December 3, 1967. He was incarcerated on that conviction on October 15, 1968. A witness from the Bureau of Corrections testified that Crawley's date of birth was June 10, 1948. The Commonwealth contends that the chronology of dates when coupled in successive order of the testimony by the witness from the Bureau of Corrections proves to a reasonable juror, beyond a reasonable doubt, that Crawley was 18 years of age at the time the first crime was committed. This court rejects that premise. There simply was no evidence that Crawley was 18 years of age at the time he committed the offense of storehouse breaking.[3]

Crawley, in support of his argument that the Commonwealth failed to prove he was 18 years of age when he committed the offense of storehouse breaking, cites *Adams v. Commonwealth*, Ky., 551 S.W.2d 561

(1977). In *Adams*, this court reversed a persistent felony conviction because the Commonwealth failed to prove Adams was 18 at the time the prior felony was committed. *Adams* stands for the proposition that every element of the persistent felony offender charge must be proved beyond a reasonable doubt.

■ Because Crawley was 19 years of age at the time he was convicted of storehouse breaking on December 3, 1967, it cannot be reasonably inferred that he was over 18 at the time he committed the offense. Therefore the Commonwealth failed to sustain the burden of proving every element of the offense beyond a reasonable doubt. Crawley's age at the time the crime of storehouse breaking was committed is a distinct element which must be proven in order to satisfy the persistent felony statute. KRS 532.080(2)(a).

The judgment is reversed with respect to Crawley's persistent felony conviction. The judgment is affirmed as to his conviction on the charge of first-degree robbery. This cause is remanded with directions that Crawley be granted a new trial on the persistent felony conviction. In the event the Commonwealth is unable to prove Crawley was 18 years of age at the time he committed the offense of storehouse breaking, this court directs that he be resentenced on the conviction of the principal offense of first-degree robbery.

The judgment as to Williams is affirmed.

All concur.

---

**3.** Another prior felony conviction was introduced. Crawley was convicted of knowingly receiving stolen property on November 8, 1972, and was incarcerated on December 14, 1972.

That crime was committed on March 10 or 11, 1972. There is no question but what Crawley was 18 at the time that offense was committed.