Tommy Richard DAVIS, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 93–SC–855–MR.

Supreme Court of Kentucky.

March 23, 1995.

Rehearing Denied June 8, 1995.

Kathleen Kallaher, Pike & Schmidt Law Office, P.S.C., Shepherdsville, for appellant.

Chris Gorman, Atty. Gen. and Gregory C. Fuchs, Asst. Atty. Gen., Cr. Appellate Div., Office of the Atty. Gen., Frankfort, for appellee.

LAMBERT, Justice.

Appellant, Tommy Richard Davis, was convicted in the Warren Circuit Court of two counts of robbery in the first degree, and persistent felony offender (PFO) in the first degree. Appellant was sentenced to two consecutive twenty year terms of imprisonment on each robbery conviction, with enhancement to two consecutive terms of life imprisonment by the PFO charge. He appeals as a matter of right.

In the early morning hours of June 19, 1993, appellant entered a 24-hour convenience store in Bowling Green, brandished an 18-inch knife, and demanded the clerk hand over all the money in the store's two cash registers. Two weeks later, in the early morning of July 3, 1993, appellant returned to the store and again demanded another clerk hand over money from the two cash registers, and threatened the clerk with the jagged edge of a broken bottle. After the robberies, both clerks picked appellant out of a photographic lineup, and identified him once again at trial. Appellant was convicted of two counts of first degree robbery, and first degree PFO, for which he was sentenced to two consecutive terms of life imprisonment.

■ Appellant contends that the trial court's refusal to grant him separate trials on the two robbery charges amounted to a denial of his due process rights under the Fourteenth Amendment of the United States Constitution. Our rule of criminal procedure on the issue provides that

> Two (2) or more offenses ... may be charged in the same indictment ... in a separate count for each offense, if the offenses are of the same or similar character or are based on the same acts or transaction connected together or constituting parts of a common scheme or plan.

RCr. 6.18.

In *Rearick v. Commonwealth*, Ky., 858 S.W.2d 185 (1993), appellant was charged with committing several acts of sexual perversion with three different children. No connection existed between the crimes, other than the fact that all three victims were children. We held it was error for the trial court to consolidate all indictments into one trial. *Id.* at 187. While the trial court is granted broad discretion in this area, our Court reversed, finding that "evidence of the crimes charged in indictments ... would not have been admissible as evidence of a common scheme or plan." *Id.* at 188. However, in *Anastasi v. Commonwealth*, Ky., 754 S.W.2d 860 (1988), this Court determined that the factual circumstances surrounding the appellant's charged crimes were of such similarity that the consolidation of all charges was within the trial court's discretion.

In the present case, in a two week period, appellant robbed the same market, during the early morning, with both a knife and a broken bottle. In both robberies, appellant demanded that the store's clerk hand over money from both registers. Although both clerks gave slightly different descriptions of appellant immediately after each robbery, both picked appellant out of a photographic lineup and were able to identify him at trial. The substance of the two robbery charges was so similar that we cannot consider the trial court's refusal to grant separate trials an abuse of discretion on this issue. *See*

*also, Cardine v. Commonwealth,* Ky., 623 S.W.2d 895 (1981); *Harris v. Commonwealth,* Ky., 556 S.W.2d 669 (1977).

Appellant also contends that the introduction and use of his prior felony convictions in the State of Arkansas failed to meet authentication standards which would allow them to be used for the persistent felony offense. The prosecution presented four documents which were certified by the Arkansas court clerk. These documents, however, were not exemplified by a judge, as required for a document to be self-authenticating, nor were they authenticated by a witness.

■ KRS 422.040 provides that

The records and judicial proceedings of any court of any state, attested by the clerk thereof in due form, with the seal of the court annexed if there be a seal, and certified by the judge, chief justice, or presiding magistrate of the court, shall have the same faith and credit given to them in this state as they would have at the place from which the records come.

Thus, for a court of this Commonwealth to properly give full faith and credit to the judgment of a court of another state, certification by that *court* is required.

■ To support its argument that introduction of certified, self-authenticating records of conviction is not required to support a PFO conviction, the Commonwealth cites both *Commonwealth v. Mixon,* Ky., 827 S.W.2d 689 (1992), and *Jackson v. Commonwealth,* Ky., 703 S.W.2d 883 (1986). While it is true that these cases allowed PFO convictions to stand without introduction of self-authenticating documents, those circumstances were far different.

■ In *Mixon,* the custodian of records of appellant's former convictions testified concerning the contents of the records, and Mixon's status as a convicted felon. In *Jackson,* certified records were introduced through a witness who was competent to testify about the records and the former convictions. Neither circumstance is present here. Detective Martin Scott of the Commonwealth Attorney's office was the only witness for the Commonwealth to support the PFO conviction. The Commonwealth admitted that it

did not truly understand the "confusing" Arkansas judgments. The detective admitted that he had no knowledge of any previous convictions of appellant, as he was simply reading from the documents. While KRS 532.080 does not specifically require the introduction of records to prove PFO status, it does require that the Commonwealth present evidence to prove every aspect of the PFO conviction that is sought.

In *Mixon* and *Jackson,* sufficient safeguards were present regarding proof of former convictions to justify PFO convictions. Those safeguards are not present here. The documents were not self authenticating under our rules of evidence, nor do they meet the requirements of RCr 9.44, CR 44.01, or KRS 422.040. No one with any knowledge of the facts surrounding the documents testified as to their authenticity. As such, evidence of appellant's prior convictions is insufficient to support the PFO conviction in the present case.

■ Error is further contended in the trial court's refusal to grant a directed verdict on the PFO charge, as appellant asserts that the Commonwealth failed to prove that he was then on probation or parole, or that within five years of the 1993 robberies he had served his sentence for the 1989 conviction. Under KRS 532.080, a person convicted of a felony after having been convicted of two previous felonies may be subject to enhanced sentencing as a first degree persistent felony offender. Among other things, the statute requires proof that the offender either have completed service for his most recent felony conviction within five years of the date of the current offense, or that he be on probation or parole.

During the sentencing phase of the trial, Detective Martin Scott of the Commonwealth Attorney's office testified that appellant was sentenced to five years in prison on three separate occasions in 1986 for the crimes of burglary, forgery and theft, respectively. Scott further testified that, in 1989, appellant was sentenced to ten years on a forgery conviction. Detective Scott was then asked if it was apparent from the documents, whether appellant was on parole, probation, or if his

1989 sentence had ended within five years of the two 1993 Bowling Green robberies. The detective, using simple subtraction, replied that the 1989 sentence was within five years of the 1993 robberies. Appellant's counsel moved for a directed verdict as no proof was presented as to appellant's status at the time of the 1993 robberies. On appeal, appellant asserts that no evidence was presented as to his probation or parole status, or whether he had completed service of his 1989 sentence, as required by KRS 532.080 to sustain a first degree PFO conviction.

In this case, the only testimony regarding the parole or probationary status of the convicted defendant was from one who admitted that he had no knowledge of such status. Detective Scott did not testify that the 1993 Bowling Green robberies were committed while appellant was on parole, probation or was within five years of completion of the sentence received from the 1989 conviction. The record is entirely silent as to whether appellant was released by virtue of executive clemency, reversal on appeal, release by way of habeas corpus, or by other means whereby persons serving felony sentences may gain relief. KRS 532.080(3) requires proof that appellant was free on probation or parole from his 1989 conviction, or that he had completed service of his sentence within five years of the 1993 robberies. The Commonwealth has the burden to prove, through direct evidence, that a defendant meets all the criteria for first degree felony offender status. We have long held that, "[b]ecause the persistent felony statute is so clear in its requirements, and so strictly penal in nature, we believe that it is improper for proof of an inferential nature to be used to obtain and sentence a conviction under its terms." *Hon v. Commonwealth*, Ky., 670 S.W.2d 851, 853 (1984).

In *Hon*, the Commonwealth failed to provide any direct evidence that the defendant was over eighteen years of age at the time of his previous felony convictions, as required for PFO enhancement in KRS 532.080. Reversing, we held, "the Commonwealth has the burden of proving, beyond a reasonable doubt, every element of the charge." *Hon* at 853.

We reiterate that conclusion. The Commonwealth must prove all the requirements of KRS 532.080 beyond a reasonable doubt. It cannot, by inference or guesswork, confer PFO status on anyone. Here, just such an inference erroneously increased appellant's sentence from a term of years to life imprisonment. When evidence at trial is insufficient to sustain a guilty verdict, retrial on the same issue amounts to double jeopardy. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), *Hobbs v. Commonwealth*, Ky., 655 S.W.2d 472 (1983). As such, we reverse appellant's first degree persistent felony offender conviction with directions that it be dismissed on remand.

As a final contention, appellant asserts that his due process rights were violated on two separate occasions at trial. He first claims that his due process rights were violated when he was brought into the courtroom in handcuffs in front of the jury panel before jury selection had begun. Appellant also claims a deprivation of his rights occurred by allowing the testimony of one robbery victim who stated that she was afraid to give either her address or place of employment for fear of retribution by the appellant.

After the jury panel was seated in the courtroom, but before selection had begun, the sheriff brought appellant into the courtroom in handcuffs. Appellant's counsel argued that the entire pool had been tainted by this event and asked for a continuance so that a jury could be selected from a new panel. Although the trial court denied this request, it offered appellant wide latitude to inquire about the possible prejudicial effect during jury voir dire.

While we can never condone placing a defendant in the position of appearing "guilty" during his own trial, such as forcing him to wear an orange prison jumpsuit or to appear in shackles before the jury, there is a position where the prejudicial effect is either de minimis or could become that through slight rehabilitation of the jury. In the present case, appellant appeared briefly in the courtroom while handcuffed, but before a jury had been seated. Counsel was given the ability to minimize any damage, if it had

occurred, during voir dire. As we have stated before, "it would be impossible as a practical matter to conduct a trial without the jury seeing some sign that the defendants are not entirely free to come and go as they please." *Douglas v. Commonwealth,* Ky., 586 S.W.2d 16, 18 (1979). As such, any error was harmless.

■ We also find no reversible error in the store clerk's statement that she was afraid to give her home address or place of employment for fear of the appellant. Under KRS 515.020, a conviction of robbery requires proof of a threat. The witness testified that appellant threatened her while in the store during the robbery. It is not unreasonable to assume that she still feared him enough to take steps to prevent a possible future encounter. As such, we affirm on this issue.

Because the first degree persistent felony offender conviction of appellant was based on insufficient evidence, we must reverse in that respect. The conviction of the Warren Circuit Court is affirmed in all other respects, but the case is remanded for further proceedings consistent with this opinion.

Stephens, C.J., and Lambert, Leibson, Reynolds, and Stumbo, JJ., concur. Spain, J., files a separate opinion concurring in part and dissenting in part in which Wintersheimer, J., joins.

SPAIN, Justice, concurring in part and dissenting in part.

I concur in so much of the opinion of the Majority as affirms the convictions of the appellant for two counts of first-degree robbery, along with the pre-enhanced punishments fixed thereon of two consecutive twenty-year terms of imprisonment, and further, in so much of the Opinion as reverses the first-degree persistent felony offender conviction and enhanced punishment of life imprisonment. I must respectfully dissent, however, from that part of the decision which directs the trial court to dismiss the PFO charge on remand.

The Majority cites *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Hobbs v. Commonwealth,* Ky., 655 S.W.2d 472 (1983), in support of its action. I believe this interpretation of both cases is too broad in the situation at hand.

In *Hobbs,* as in the case *sub judice,* we were concerned with incompetent evidence erroneously admitted by the trial court at the instance of the Commonwealth, rather than with an insufficiency of evidence to sustain a conviction. We observed in *Hobbs* at pp. 473 and 474:

When a conviction is reversed on appeal because the evidence at trial was not sufficient to sustain a verdict of guilt, the United States Supreme Court has held that the case cannot be remanded for retrial but must be dismissed. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Kentucky has followed this holding in *Crawley v. Commonwealth,* Ky., 568 S.W.2d 927 (1978).

Hobbs contends that charges against him must be dismissed rather than remanded because there would have been no sufficient evidence to sustain his conviction if the trial judge had sustained his objection and refused to admit the incompetent evidence to establish the dates of the commission of the offenses, citing *Burks* and *Crawley.*

■ *Burks* and *Crawley* were each decided upon the basis that the evidence admitted at the trial, without regard to whether it was erroneously admitted, was not sufficient to sustain a conviction. Here, the testimony admitted in evidence was sufficient to sustain the conviction. We are not disposed to hold that an error by a trial court in the admission of testimony in evidence precludes a retrial when an appellate reversal is procured by a defendant on that ground. In such a case, the defendant is entitled only to an opportunity to obtain a fair readjudication of his guilt free from error.

*Burks v. United States, supra,* relied upon by Hobbs, makes this very point in the following language:

As we have seen in Part II, *supra,* the cases which have arisen since [*U.S. v.*] *Ball* [163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300] (1896) generally do not dis-

tinguish between reversals due to trial error and those resulting from evidentiary insufficiency. We believe, however, that the failure to make this distinction has contributed substantially to the present state of conceptual confusion existing in this area of the law. Consequently, it is important to consider carefully the respective roles of these two types of reversals in double jeopardy analysis.

Various rationales have been advanced to support the policy of allowing retrial to correct trial error, but in our view the most reasonable justification is that advanced by [U.S. v.] Tateo, supra, [377 U.S. 463] at 466 [84 S.Ct. 1587 at 1589, 12 L.Ed.2d 448] (1964):

> "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction."

See [U.S. v.] Wilson, supra, [420 U.S. 332] at 343–344, n. 11 [95 S.Ct. 1013 at 1021–1022, n. 11, 43 L.Ed.2d 232] (1975); Wade v. Hunter, 336 U.S. 684, 688–689 [69 S.Ct. 834, 836–837, 93 L.Ed. 974] (1949). In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. *Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.* (Emphasis ours.)

In *Crawley, supra,* we also remanded for a new PFO hearing and added the following comment:

> The judgment is reversed with respect to Crawley's persistent felony conviction.

The judgment is affirmed as to his conviction on the charge of first-degree robbery. This cause is remanded with directions that Crawley be granted a new trial on the persistent felony conviction. In the event the Commonwealth is unable to prove Crawley was 18 years of age at the time he committed the offense of storehouse breaking, this court directs that he be resentenced on the conviction of the principal offense of first-degree robbery.

I am persuaded that the identical action should be followed here with regard to the PFO conviction of Davis, and that the alternate sentencing proceedings would also be appropriate here in the event the Commonwealth were unable at retrial to prove *any* element of the PFO charge.

WINTERSHEIMER, J., joins.