James **MERRIWEATHER**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2001–SC–1050–MR.

Supreme Court of Kentucky.

March 20, 2003.

Emily Holt, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, Brian T. Judy, Assistant Attorney General, Frankfort, for Appellee.

Opinion of the Court by Justice GRAVES.

Appellant, James Merriweather, was convicted in the Adair Circuit Court of first-degree burglary, first-degree criminal mischief, and of being a first-degree persistent felony offender. He was sentenced

to a total of twenty-five years imprisonment and appeals to this Court as a matter of right. For the reasons set forth herein, we affirm the burglary and criminal mischief convictions; however, we reverse the PFO conviction and remand the matter to the circuit court for further proceedings in accordance with this opinion.

Around 11:00 p.m. on February 14, 2001, Appellant and Donald Wadley broke into the residence of Stephanie Case and Chad Bridgewater. At the time, Case and her two-year-old daughter were in bed. Case testified that when she heard footsteps and saw the two men standing in the doorway of her bedroom, she laid herself over her daughter, pulling the covers over both of them. Case told the two men she did not see their faces and asked them to leave. Both men fled the premises. Case thereafter called 911. Police initially apprehended a third individual, John Johnson, who was supposed to have picked up Appellant and Wadley after the burglary. A short time later, Appellant and Wadley were apprehended as well.

## I.

Prior to his October 2001 trial on the instant charges, Appellant filed a motion objecting to the use of the same jury pool that was used for his July 2001 trial on an unrelated assault charge. In response, the trial court added 22 jurors from the district court pool to the existing circuit court pool, as well as excused the 12 jurors who actually served on the July panel. Ultimately, the pool from which the jury was chosen in this case included 6 individuals who had participated in voir dire in the July trial. Appellant used six peremptory challenges to remove the jurors in question.

■ Appellant argues that it was *per se* prejudicial to include the six individuals in the jury pool since they had participated in the voir dire on his previous unrelated trial. Appellant contends that the trial court's questioning of these jurors as to their recollection of the previous trial tainted the entire pool, in that it informed all potential jurors that he had been accused of committing past crimes.

In *Young v. Commonwealth,* Ky., 286 S.W.2d 893 (1955) and *Bowling v. Commonwealth,* Ky., 286 S.W.2d 889 (1956), our predecessor court held that service as a juror in a previous but unrelated trial of the same defendant was not sufficient grounds to establish implied bias. "It cannot be presumed that a jury panel or individual jurors will be prejudiced against a particular defendant because they are aware of or have participated in his trial on an entirely unrelated matter." *Young, supra,* at 894. In *Watson v. Commonwealth,* Ky., 433 S.W.2d 884, 887 (1968), the Court was again presented with facts similar to the instant case and stated that "if 'prejudice exists, it may be brought out on voir dire, and of course the defendant still has peremptory challenges,' thus ... the question is to be resolved on the basis of actual bias ...." (*Quoting Young, supra.*).

Here, the trial court specifically inquired whether any of the prospective jurors had participated in or knew any details of Appellant's previous trial. Ten jurors acknowledged that they were aware of the prior trial, four of which informed the trial court that they knew the outcome of such and were excused. The remaining six jurors stated that they had no specific knowledge about the prior trial and would form an opinion on the instant charges based solely on the evidence presented.

■ RCr 9.36 provides that "when there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, he shall

be excused as not qualified." The trial court is vested with the discretion to make such decisions and will not be overturned absent an abuse of that discretion. Here, the trial court was diligent in excusing those jurors who had significant knowledge of Appellant's previous trial and were subject to a reasonable inference that they may have formed an opinion. Other than the fact that the jurors in question were members of the July jury pool, Appellant did not allege any specific instances of bias. We are of the opinion that the trial court observed the demeanor of the prospective jurors and evaluated the substance of their responses. Accordingly, no prejudice resulted.

## II.

■ Appellant next argues that the trial court failed to suppress the victim's identification of him which he contends was made through an improper "show-up" procedure. We disagree.

Following Appellant's and Wadley's arrest, they were taken to the Adair County trial commissioner's office. Case, who was already there filing a criminal complaint, was taken out to the squad car where she positively identified Appellant and Wadley as the perpetrators. Prior to trial, Appellant filed a motion to suppress the identification on the grounds that the show-up procedure was "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The trial court denied the motion. At trial, Case again identified Appellant.

■ While courts generally look upon show-up identifications with disfavor due to the inherent suggestiveness of the procedure, they are nonetheless necessary under certain circumstances because they occur immediately after the commission of the crime and aid police in either establishing probable cause or clearing a possible suspect. *Stidham v. Commonwealth*, Ky., 444 S.W.2d 110 (1969). However, because the procedure is suggestive by its nature, a court "must then assess the probability that the witness would make an irreparable misidentification based upon the totality of the circumstances and in light of the five factors enumerated in *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), which include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation."

All five *Biggers* factors were clearly met in this case. Although Case told the intruders that she had not seen their faces, she, in fact, heard the backdoor being kicked in and saw the two men standing in the door of her bedroom. She informed police that the kitchen light was illuminating the hallway and that the men were standing only about two to four feet away when she observed them. Prior to identifying Appellant and Wadley, Case gave a description that matched Appellant—a heavy set African–American male having some hair and wearing a coat, as well as a description that matched Wadley—a skinnier African–American male with dread locks. Case was certain of her identification when she viewed the men only a couple of hours after the crime.

By analyzing the five *Biggers* factors, the totality of the circumstances indicate that Appellant's due process rights were not violated. *Savage v. Commonwealth*, Ky., 920 S.W.2d 512 (1995). Further, Case's in-court identification was reliable, even though the pretrial identification may

or may not have been suggestive. Finally, Case's identification was corroborated by Wadley, who testified that he and Appellant entered the Case residence on the night in question. No error occurred.

## III.

■ Appellant next argues that his PFO conviction must be vacated since the Tennessee felony judgments and probation report failed to satisfy the statutory requirements for authentication and should not have been admitted during the PFO phase. The Commonwealth introduced photocopies of two Tennessee judgments showing that Appellant had a 1995 conviction for aggravated assault and a 1991 conviction for sale of a controlled substance. Further, to establish violation of the PFO statute under the "on probation at the time of the offense" prong, KRS 532.080(2)(c)(2), the Commonwealth introduced a faxed copy of a Tennessee probation order indicating that Appellant was to be on probation from April 15, 1999 until July 23, 2002. The Adair County Probation and Parole Officer testified concerning all three documents. Although none of the documents were certified, the trial court overruled defense counsel's objection to their use.

■ KRS 422.020 provides in part:

The records and judicial proceedings of any court of any state, attested by the clerk thereof in due form, with the seal of the court annexed if there be a seal, and certified by the judge, chief justice, or presiding magistrate of the court, shall have the same faith and credit given to them in this state as they would have at the place from which the records come.

"Thus, for a court of this Commonwealth to give full faith and credit to the judgment of another state, certification by that *court* is required." *Davis v. Commonwealth*, Ky., 899 S.W.2d 487, 489 (1995).

In a somewhat nebulous three-part argument, the Commonwealth responds that: (1) we should disregard the *Davis* decision because our interpretation of KRS 422.040 therein is an impermissible infringement by the legislature on this Court's rule-making authority; (2) KRS 422.020 is not applicable in this case since the Commonwealth is not seeking to give full faith and credit to Appellant's Tennessee convictions, but rather only to prove that Appellant is a persistent felony offender; and (3) that the judgments were properly authenticated through their contents and distinctive characteristics pursuant to KRE 901(b)(4)[1], and were also self-authenticating under KRE 902(1) and (4).

The Commonwealth misconstrues the meaning and applicability of KRS 442.040. Proof of Appellant's prior convictions was an indispensable element of the PFO charge. Accordingly, proof beyond a reasonable doubt was required of the Commonwealth. *See Hall v. Commonwealth*, Ky., 817 S.W.2d 228 (1991), *overruled on other grounds* in *Commonwealth v. Ramsey*, Ky., 920 S.W.2d 526 (1996). Thus, when the Commonwealth is seeking to use a prior conviction to enhance a sentence, it is, in fact, seeking "full faith and credit" of that prior conviction and the requirements of KRS 442.040 must be satisfied.

Furthermore, the Commonwealth ignores the language contained in KRE 902(1) and (4) which requires certification or "attestation" of even self-authenticat-

---

1. "[T]he following are examples of authentication or identification conforming with the requirements of this rule: (4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." KRE 901(b)(4)

ing documents. The Tennessee judgments and the probation report were clearly not self-authenticating as they contained no certification, attestation by a witness, or exemplification by a judge. Nor did anyone with knowledge of the facts surrounding the documents testify as to their authenticity. The Probation and Parole officer admitted that he was not familiar with the documents and was simply reading the information contained therein.

■ As we stated in *Robinson v. Commonwealth*, Ky., 926 S.W.2d 853, 854 (1996), we do not "embrace any compilation of data by any court or police agency in the absence of exemplification, as required by KRS 422.040, or a witness who can testify that the record comports with the business record exception to the hearsay rule." The Commonwealth bears the burden of the strict proof requirements for a PFO conviction and must establish the authenticity of the prior judgments of conviction. In this case, the Commonwealth failed to meet that burden and, as a result, Appellant's PFO conviction must be reversed.

■ We are cognizant of the fact that in *Davis, supra*, we held that because the Commonwealth produced insufficient evidence to prove the PFO charge, retrial on the same issue would constitute double jeopardy. However, we perceive a distinction between "insufficient" evidence and "incompetent" evidence. Here, we are reversing Appellant's PFO conviction not because the Commonwealth failed to present sufficient evidence to demonstrate that he was a persistent felony offender, but because the evidence introduced was improperly authenticated and therefore incompetent. There was, in fact, sufficient evidence to convict Appellant on the PFO charge. His prior convictions and probation record simply should have been certified and attested to by an officer having legal custody of the records. This error does not negate the evidence, and reversal on the grounds that the evidence supporting the conviction was erroneously admitted does not, under double jeopardy principles, prohibit retrial. As this Court stated in *Commonwealth v. Mattingly*, Ky., 722 S.W.2d 288, 288–89 (1986):

> [R]eversal for a trial error which incorrectly admitted incompetent evidence does not constitute a decision that the government has failed to prove its case. Rather, it is a determination that although the government did prove its case, it did so by evidence which was incompetent, and defendant is entitled to a new trial free of this procedural defect.

*Citing Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *see also Hobbs v. Commonwealth*, Ky., 655 S.W.2d 472 (1983).

Accordingly, we overrule our decision in *Davis v. Commonwealth*, Ky., 899 S.W.2d 487 (1995), to the extent that it would prohibit retrial of a PFO charge where there was sufficient evidence, albeit improperly admitted, to sustain the verdict. Here, the Tennessee felony judgments and probation report were sufficient, although incompetent, evidence proving Appellant's conviction as a persistent felony offender.

Appellant's convictions for first-degree burglary and criminal mischief are affirmed. However, his conviction for being a first-degree persistent felony offender is reversed and the matter is remanded to the Adair Circuit Court for a new penalty phase of the trial.

All concur.