**Reginald Lamont WHITTLE,
Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2009–SC–000787–MR.

Supreme Court of Kentucky.

Sept. 22, 2011.

Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Reginald Lamont Whittle, was convicted in Jefferson Circuit Court of possession of marijuana, trafficking in cocaine, tampering with physical evidence, and being a first-degree persistent felony offender, and sentenced to a prison term of thirty years. He challenges his convictions and sentence. Finding a Confrontation Clause violation, his trafficking and tampering convictions are reversed. His conviction for possession of marijuana is affirmed.

## I. Background

The events giving rise to this case began when police officers on patrol observed Appellant walking down a street one afternoon in Louisville in the summer of 2004. When Appellant noticed the police, and believed they were following him, he ran and tossed a bag containing a white powder onto the sidewalk. That white powder was later determined in the state crime lab to contain cocaine.

Police chased after Appellant, and eventually caught and arrested him for trafficking in a controlled substance. In a search incident to that arrest, they found a bag of marijuana, $906 in cash, a cell phone, and a knife on him.

Appellant was charged with trafficking in a controlled substance; tampering with physical evidence; and possession of marijuana. He was convicted on all three counts and as a first-degree persistent felony offender (PFO). Including PFO enhancements, Appellant was sentenced to twenty years for trafficking and ten years for tampering, both to run consecutively for a total of thirty years. He was also sentenced to twelve months for the misdemeanor possession of marijuana to run concurrently with the two felony convictions.

He appeals his convictions and sentence directly to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

Appellant raises four arguments on appeal. First, he contends that the trial court should have struck for cause a juror who was friends with a state trooper. Second, he argues that the admission of the laboratory report analyzing the white powder to be cocaine violated the Confrontation Clause. Third, he claims that the Commonwealth failed to provide sufficient evidence that he was on parole at the time of his arrest, a critical element in the PFO charge. Finally, he contends that the combined 30 year sentence violates Kentucky sentencing law.

### A. Juror Strike

■ Appellant complains that a member of the jury pool, whom Appellant unsuccessfully attempted to strike for cause, was biased by his friendship with a state trooper. Appellant removed this juror through a peremptory strike but, since this depleted a peremptory strike he would have used on another juror, he can demonstrate prejudice, if in fact the court should have

struck the juror for cause. *Shane v. Commonwealth,* 243 S.W.3d 336, 340 (Ky.2007).

■ A juror must only be struck for cause if there is a probability he will be biased in favor of one party over the other. *Pennington v. Commonwealth,* 316 S.W.2d 221, 224 (Ky.1958). Appellant admits that friendship with a law enforcement official does not create inherent bias in a juror toward the prosecution. *See Penman v. Commonwealth,* 194 S.W.3d 237, 252–53 (Ky.2006), *overruled on other grounds by Rose v. Commonwealth,* 322 S.W.3d 76 (Ky.2010). As "even law enforcement personnel are not automatically excluded from the jury panel," it would be absurd to automatically disqualify their friends. *Id.* at 252.

Appellant argues that while this friendship alone is insufficient to strike for cause, the juror's responses in voir dire demonstrated his probable bias. In response to how his friendship with a state trooper would affect his participation on the jury, the juror initially stated that he believed he would remain impartial. However, when asked immediately thereafter whether there was "a possibility bias might creep in," he agreed there was that possibility. Appellant, to no surprise, emphasizes the latter response: the juror's admission that there was a "possibility" that through his friendship with the state trooper, bias in favor of the prosecution could "creep in" to his adjudication. Appellant claims that this response alone mandated that the juror be struck for cause.

■ "A determination whether to excuse a juror for cause lies within the sound discretion of the trial court and is reviewed only for a clear abuse of discretion." *Soto v. Commonwealth,* 139 S.W.3d 827, 848 (Ky.2004). To determine bias, the court is required to look at the totality of the circumstances. *Montgomery v. Commonwealth,* 819 S.W.2d 713, 718 (Ky.1991). A

juror's response to one question, even if it may on its own indicate bias, does not necessarily outweigh the remaining indicia of neutrality. *See id.* The question, therefore, is whether, given the totality of voir dire, the trial court properly exercised its discretion in finding no probability of bias.

The juror's two responses regarding the impact of his friendship on his potential adjudication of this case are not contradictory. He believed he could remain impartial, but nonetheless conceded there was possibility he would not. A mere possibility of bias does not necessitate striking a juror for cause. The question for the court then became whether this possibility rose to the level of probability.

Without attempting a mathematical definition of "probability," this Court simply states that the task for the trial judge was to ascertain whether by "possibility," the juror meant "a real chance" or meant the theoretical notion that "anything is possible." The former equates to probability and requires the juror to be struck for cause; the latter denotes nothing more than theoretical speculation, which should not form the basis of any court action.

In this case, the trial judge clearly viewed the juror's "possibility" as the latter. In denying Appellant's motion to strike for cause, she interpreted the juror's concession of a "possibility" as equal to the "possibility that it could snow today," in the middle of May. This was insufficient to cause the court any concern. The trial court exercised its discretion appropriately.

### B. Lab Report

■ Appellant next contends that the trial court ran afoul of the Confrontation Clause of the Sixth Amendment by allowing the Commonwealth to introduce, as hearsay, a report from the state crime lab

without live testimony from its author. Gary Boley was the chemist at the state crime lab who authored the report identifying the white powder in the bag that Appellant had tossed onto the sidewalk as cocaine. However, due to illness, Boley failed to appear in court and the director of the lab, Terry Comstock, testified in his stead. Comstock read from and discussed the report, which was then admitted into evidence.

The report itself is titled "Report of Forensic Laboratory Examination," and includes in the upper left hand corner the designation "Kentucky State Police/Jefferson Regional Forensic Laboratory" along with the lab's mailing address. The report notes that various materials were submitted to the lab by the police, that "[i]dentification of controlled substances" was requested, and that the results of examination showed that the materials contained cocaine. The report identifies the officer who requested the analysis and is dated and signed by the examiner, Gary W. Boley, at the bottom.

At trial, Appellant objected to the admission of and testimony relating to this report on both hearsay and Confrontation Clause grounds. On appeal, he characterizes his challenge to this report primarily as one under the Confrontation Clause, though he also continuously refers to it as hearsay and rejects its admissibility as a business record. Ordinarily, courts prefer to avoid constitutional questions if the issue can be resolved on other grounds. Thus, for example, if a given piece of testimony violated the hearsay rules (and was thus inadmissible) and likely violated the Confrontation Clause, it would usually not be necessary to reach the constitutional question. Such a case could be resolved solely by finding an error grounded in the law of evidence.[1] But the United States Supreme Court has very recently rendered a decision on the very confrontation issue presented by this case. *See Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). Because that decision requires reversal of Appellant's conviction, this Court addresses only the confrontation claim.

Even if the lab report qualified for the business records exception to state hearsay law, that would not immunize it from the Confrontation Clause. The Confrontation Clause bestows on "the accused ... the right ... to be confronted with the witnesses against him." U.S. Const. amend. XI. The Supreme Court's jurisprudence on this subject has been changing rapidly since the decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), "which effected a sea change in Confrontation Clause doctrine." *Miller v. Stovall,* 608 F.3d 913, 928 (6th Cir.2010) (citation omitted). In *Crawford,* the Court departed from long-standing precedent, *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which had held that statements did not violate the Confrontation Clause if they bore "adequate 'indicia of reliability.'" *Id.* at 66, 100 S.Ct. 2531. That test was met if the evidence fell within a "firmly rooted hearsay exception" or had other "particularized guarantees of trustworthiness." *Id.*

---

1. The clear exception is when admission of evidence in violation of both the evidence rules and Confrontation Clause would be harmless error under the standard for non-constitutional error, but would not be harmless under the more demanding standard for constitutional error. *Compare Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky. 2009) (requiring reversal for non-constitutional error only if the error had a "substantial influence" on the verdict), *with Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (requiring reversal for constitutional errors unless harmless beyond a reasonable doubt).

*Crawford* instead held that the Confrontation Clause prescribes only one method for testing reliability—confrontation—and that method was required if the statement in question was testimonial. *Crawford,* 541 U.S. at 59, 61, 124 S.Ct. 1354. It further defined "testimony" as "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354 (quoting 2 N. Webster, *An American Dictionary of the English Language* (1828)). The question whether the reports of state laboratory analysts produced as part of a criminal investigation are testimonial and thus subject to the Confrontation Clause has resulted in two recent U.S. Supreme Court decisions, *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and *Bullcoming v. New Mexico.*

In *Melendez–Diaz v. Massachusetts,* the Supreme Court dealt with a Confrontation Clause issue factually similar to the one before the Court here. In a drug trafficking trial, the prosecution entered into evidence "certificates of analysis" showing that seized substances were analyzed and found to be cocaine. *Melendez–Diaz,* 129 S.Ct. at 2531. The analysts did not testify at trial. Instead, the certificates consisted of sworn affidavits by the analysts affirming their analysis. *Id.* The question before the Court was whether these affidavits were testimonial, thereby implicating the defendant's right of confrontation. The Court answered this question in the affirmative. Thus, their introduction, without any opportunity for the defendant to confront the analysts, violated the Confrontation Clause. *Id.* at 2542.

But since the submission of the briefs to this Court, the U.S. Supreme Court has revisited the issue, with slightly different facts, in *Bullcoming,* which concerned a conviction for DUI and a forensic test of the defendant's blood alcohol level, and an unsworn laboratory report. In that case, the analyst who performed the test, Curtis Caylor, was on unpaid leave for an unrevealed reason. *Bullcoming,* 131 S.Ct. at 2712. At trial, another analyst from the same lab testified about the tests. Though that analyst "had neither observed nor reviewed" the original test, *id.* at 2709, he was qualified as an expert as to the testing equipment and the lab's procedures, *id.* at 2713. The lab report was admitted through his testimony. The report in that case was on a "form titled 'Report of Blood Alcohol Analysis,' [and] participants in the testing were identified, and the forensic analyst certified his finding." *Id.* at 2710. The report included blocks describing the reason for the arrest and the withdrawal of a blood sample, and a "'certificate of analyst,' completed and signed by Curtis Caylor, the SLD forensic analyst assigned to test Bullcoming's blood sample." *Id.* (citation omitted). The report then described the defendant's blood alcohol content and included statements that proper lab procedures had been followed and that the reported information was correct. *Id.* The report concluded with "a block headed 'certificate of reviewer,' the SLD examiner who reviewed Caylor's analysis certified that Caylor was qualified to conduct the BAC test, and that the 'established procedure' for handling and analyzing Bullcoming's sample 'had been followed.'" *Id.* at 2711 (original indication of alteration omitted). The report was unsworn. *Id.* at 2717.

The Court reversed Bullcoming's conviction, holding both that testimony by a proxy and admission of the lab report without the analyst being subject to confrontation violated the Constitution.

As to testimony by proxy, the Court noted, "the analysts who write reports that the prosecution introduces must be made available for confrontation." *Id.* at 2715.

This is because "when the State elected to introduce Caylor's certification, Caylor became a witness Bullcoming had the right to confront." *Id.* at 2716.

As for the report itself, the Court held that it was "testimonial" and thus subject to confrontation. The court noted that "[a] document created solely for an 'evidentiary purpose,' *Melendez–Diaz* clarified, made in aid of a police investigation, ranks as testimonial." *Id.* at 2717. The Court declined to make a distinction between the report in *Melendez–Diaz,* which had been sworn before a notary and was a formal affidavit, and the certificate used against Bullcoming, which was not sworn, noting that "the absence of an oath is not dispositive in determining if a statement is testimonial." *Id.* (quotation marks and indications of alteration omitted). The Court concluded:

> In all material respects, the laboratory report in this case resembles those in *Melendez–Diaz.* Here, as in *Melendez–Diaz,* a law-enforcement officer provided seized evidence to a state laboratory required by law to assist in police investigations. Like the analysts in *Melendez–Diaz,* analyst Caylor tested the evidence and prepared a certificate concerning the result of his analysis. Like the *Melendez–Diaz* certificates, Caylor's certificate is "formalized" in a signed document headed a "report." Noteworthy as well, the SLD report form contains a legend referring to municipal and magistrate courts' rules that provide for the admission of certified blood-alcohol analyses.

> In sum, the formalities attending the "report of blood alcohol analysis" are more than adequate to qualify Caylor's assertions as testimonial. The absence of notarization does not remove his certification from Confrontation Clause governance. The New Mexico Supreme Court, guided by *Melendez–Diaz,* correctly recognized that Caylor's report "fell within the core class of testimonial statements," described in this Court's leading Confrontation Clause decisions. . . .

*Id.* (citations omitted).

Despite the similarities between the issue presented here and that resolved by the U.S. Supreme Court in *Melendez–Diaz,* the Commonwealth ventures three arguments for why its authority does not mandate reversal here: It should be distinguished; should not apply retroactively; and any finding of error it mandates here is harmless. Presumably, the Commonwealth would make the same arguments as to *Bullcoming.*

The best-argument is that *Melendez–Diaz* should be distinguished from the case at hand. The Commonwealth attempts to distinguish the "certificates of analysis" entered into evidence in *Melendez–Diaz* because they, unlike the lab report here, were unaccompanied by live witness testimony. It claims that because Terry Comstock testified in court to the contents of this report, and Appellant was free to cross-examine him, his Confrontation Clause rights were satisfied.

This distinction would carry water if Comstock's testimony about testing was the only evidence admitted, and not the report itself. But the report was admitted into evidence. Appellant's opportunity to cross-examine Comstock does not satisfy any potential right to be confronted with the author of the report. See *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354 (noting that in type of English prosecution Confrontation Clause was designed to prevent, "Raleigh was, after all, perfectly free to confront those who read Cobham's confession in court"). Even if Appellant could hypothetically demonstrate that Comstock was ignorant about chemistry or a complete liar, he still could not confront the author of the report.

While the certificates from *Melendez–Diaz* included affidavits from the analysts, whereas no such oath-like affirmation is present here, *Bullcoming* makes clear that no oath is necessary and that other, lesser formalities are sufficient to make the statements testimonial. The report in this case was sufficiently like that in *Bullcoming* to make the statements included in it testimonial. Like the reports in both *Melendez–Diaz* and *Bullcoming*, the statements in this case are in a "document created solely for an 'evidentiary purpose,'... made in aid of a police investigation," and were " 'formalized' in a signed document headed a 'report.' " *Bullcoming*, 131 S.Ct. at 2717. That the report in this case did not include the specific language "certifying" its contents or results does not remove it from "the core class of testimonial statements." *Id.* The use of an official form with "Kentucky State Police" emblazoned across the top and the signature of the state's agent at the bottom are a formal certification of the agent's statements in the report. This Court thus concludes that such statements are testimonial in nature and subject to the Confrontation Clause. The Commonwealth argues that *Melendez–Diaz* should not be applied retroactively. Presumably, this argument extends also to *Bullcoming*, which came later. Appellant's trial occurred one month prior to the decision in *Melendez–Diaz* and several years before *Bullcoming*, so, the Commonwealth argues, it is unreasonable to expect the trial judge to have ruled in conformity with the decision. In support of its argument, the Commonwealth cites to the Sixth Circuit's holding in *Miller v. Stovall* that "a federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time [the] state-court conviction became final.' " 608 F.3d at 919 (quoting *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

■ But this case is the direct appeal of Appellant's conviction, not a collateral attack like a habeas petition. "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Because Appellant's case is still on direct review, *Miller* and *Williams* are not applicable to this case, which makes the Commonwealth's citation to them misguided. *Miller* provided that *after* a case is final, including all appeals, habeas review must incorporate the law as it existed at the time the case became final. *Miller*, 608 F.3d at 919. Thus, the federal district court was bound in its habeas review not by *Roberts*, the law in place during trial, but by *Crawford*, which had replaced *Roberts* by the time the case was finalized on appeal. *Id.* But see *id.* at 929–31 (Boggs, J., dissenting) (arguing that under Supreme Court precedent, as announced by Justice O'Connor, it is the law in place at time of trial that should control). This case, on the other hand, is obviously not yet final, for this Court is now resolving it. This Court is charged with ascertaining the proper law to be applied and only after it has done so, or appeals are otherwise exhausted, does finality ensue. In fulfilling this charge, this Court ascertains that *Melendez–Diaz* and *Bullcoming* do apply retroactively.

■ The last question, then, is whether the confrontation violation in this case was harmless error. Even constitutional errors can be harmless, though "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 22, 24, 87 S.Ct. 824, 17

L.Ed.2d 705 (1967). Whether the substance Appellant was accused of trafficking was actually cocaine was an element of the offense. That element was proven almost solely by the lab report in this case. As to the trafficking conviction, this Court cannot say that Appellant's inability to confront the person who made the lab report was harmless beyond a reasonable doubt. That conviction is thereby reversed.

Likewise, evidence that the bag Appellant threw on the ground contained cocaine was critical to the tampering with physical evidence charge. Even assuming *arguendo* that disposing of a non-cocaine containing bag *could* have constituted a tampering charge, a conviction of such conduct would have been far less likely. Without doubt, testimony that the bag he threw on the ground contained cocaine played a large role in persuading the jury to convict.

■ On the other hand, we cannot find any reasonable possibility that the unconfronted lab report played any role in the possession of marijuana conviction. Admittedly, inadmissible testimony about a defendant's other bad acts, such as his trafficking in cocaine, is frequently harmful error. However, in this case, testimony at trial was uncontroverted that police found a bag of marijuana on Appellant's body. Thus, even without the admission of any evidence related to cocaine, there is no reasonable possibility Appellant would have been acquitted of possession of marijuana. As to that conviction, then, this Court concludes that the Confrontation Clause violation was harmless beyond a reasonable doubt.

**2.** Any tension between the double-jeopardy holdings in *White* and *Davis* need not be resolved. This Court is not presented with a *Davis* scenario, in which only the sufficiency

## C. Other Issues

■ Because the two felony convictions are reversed, Appellant's related PFO conviction must necessarily be vacated. This raises the question whether any claim of error as to the PFO conviction is moot. This Court has held in the past that where the Commonwealth offered insufficient proof of a PFO charge and the defendant was therefore entitled to a directed verdict of acquittal, the bar on double jeopardy prevented retrial of that charge. *See Davis v. Commonwealth*, 899 S.W.2d 487, 490 (Ky.1995) ("When evidence at trial is insufficient to sustain a guilty verdict, retrial on the same issue amounts to double jeopardy. As such, we reverse appellant's first degree persistent felony offender conviction with directions that it be dismissed on remand."), *overruled on other grounds by Merriweather v. Commonwealth*, 99 S.W.3d 448 (Ky.2003).

*Davis* differs from this case, however, in that the underlying convictions in that case were affirmed. Only the PFO conviction was reversed. But as this Court has also held:

A PFO trial does not involve an independent criminal offense but rather a status which enhances punishment for a crime committed by a person who is an habitual criminal. . . . Conviction as a Persistent Felony Offender is not a charge of an independent criminal offense but rather a particular criminal status. Consequently double jeopardy does not attach.

*White v. Commonwealth*, 770 S.W.2d 222, 223–24 (Ky.1989). The difference between *White* and *Davis*, of course, is that in the former, the underlying conviction had been reversed. As such, *White* controls the outcome here.[2] Because the underlying crime

of the evidence for the PFO conviction is challenged, and thus need not address the ongoing validity of that case.

may be retried, so too can the PFO charge. There is no double jeopardy bar as to retrial of the PFO charge.

Nevertheless, it is worth noting that the Commonwealth needs to provide *some* evidence to support a PFO charge, if it chooses to retry the count. This Court has retreated somewhat from the position "that it is improper for proof of an inferential nature to be used to obtain [a PFO enhancement] and sentence a conviction under its terms," *Davis v. Commonwealth,* 899 S.W.2d 487, 490 (Ky.1995) (quoting *Hon v. Commonwealth,* 670 S.W.2d 851, 853 (Ky.1984)), to hold instead that "[a] reasonable inference is sufficient to meet the requirements of the PFO statute," *Martin v. Commonwealth,* 13 S.W.3d 232, 235 (Ky.1999).[3] In so holding, the Court distinguished between a reasonable inference and mere "guess work":

> A reasonable inference is one in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess. It is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven. Guesswork, on the other hand, is the process of making a judgment without adequate information, or to conjecture, or to speculate.

*Id.* at 235.

So to uphold a conviction, an appellate court must be convinced that the evidence supports a reasonable inference and is not just mere "guess work." A trial court must be similarly convinced when faced with a motion for a directed verdict. This Court need not decide whether the evidence in this case supported a reasonable inference or only guess work. The case law is replete with examples of how to accomplish the former, which the Commonwealth is urged to review should it choose to pursue a PFO conviction on retrial.

### D. Consecutive Sentencing

Because Appellant's felony convictions are being reversed, his claim about sentencing need not be addressed. *Cf. St. Clair v. Commonwealth,* 174 S.W.3d 474, 485 (Ky.2005).

### III. Conclusion

For the reasons stated herein, Appellant's convictions for trafficking in cocaine and tampering with physical evidence are reversed, his conviction for possession of marijuana is affirmed, and this case is remanded to Jefferson Circuit Court for further proceedings consistent with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCOTT and VENTERS, JJ., concur. SCHRODER, J., concurs in result only.

---

**3.** Though the Court claimed to distinguish *Davis*'s facts from those in *Martin,* while overruling another case, *Hon v. Commonwealth,* 670 S.W.2d 851 (Ky.1984), it is clear that to some extent *Martin* and *Davis* are simply incompatible (especially since *Davis* relied in large part on *Hon* ). *Martin* clearly rejected *Davis*'s holding that PFO can only be proved by direct evidence.